STATE OF UTAH EX REL. JOHN E. COX, Respondent, *v.* THE BOARD OF EDUCATION OF SALT LAKE CITY AND SAMUEL DOXEY, Appellants.

Writ of Mandate—Facts Admitted by Demurrer—Board of Health—Board of Education—Powers—To Exclude Unvaccinated Children from Public Schools During the Prevalence of Smallpox—Secs. 9 and 24, Ch. 45, S. L., 1899 —Police Power.

Where the answer to a petition for a writ of mandate, among other things, alleged that smallpox was an infectious contagion, and epidemic in the community, and included types of the most malignant and deadly character; that the only known preventive therefor recognized and approved by medical science throughout the civilized world was vaccination with animal lymph or vaccine matter, that such vaccination was a condition of allowing pupils to enter the public schools, in order to prevent the spread of such disease therein; that the petitioner by means of the premises, not having been vaccinated as a condition of entering therein was liable to carry the disease into the public schools; that an emergency existed for calling into existence such powers as the board of health possessed in order to prevent the threatened spread of smallpox, and where a demurrer was interposed to such answer; *Held,* that for the purposes of the hearing, such demurrer admitted as true, the material allegations of fact contained in the answer, upon which admitted facts the court must apply the law.

21 Utah—26.

Where it is admitted that an emergency existed; that the contagious and infectious disease of smallpox was prevalent, and vaccination is admitted by the pleadings to be the only safe preventive recognized and approved by medical science, throughout the civilized world, a rule of the board of health and the board of education, excluding all unvaccinated pupils, who are liable to carry smallpox into the schools, from attending the public schools during the prevalence of the disease, is not only a reasonable regulation in aid of the public health and justified by a reasonable construction of Secs. 9 and 24, Ch. 45 Sess. Laws, 1899, pp. 67 and 70, but it also finds ample support in the police power inherent in the State.

*Can not Compel Vaccination—Except.*

Where no attempt was made on the part of the board of health to compel vaccination, but during the emergency an option was given the pupil who was liable to convey the disease into the schools, to be vaccinated or remain away from the schools until the danger from smallpox was past, the order is justified under the police power inherent in the State and such power is delegated by statute.   This holding, however, must not be construed as empowering the board to require compulsory vaccination without the consent of the patient.

*Constitution.*

Although the constitution of this State is silent on the subject of controlling contagious diseases, no one person has the legal right to infect another with smallpox, and the statute can not be construed as conferring that right upon any person or class of people.

BASKIN. J., dissenting.

(Decided April 26, 1900.)

Appeal from the Third District Court, Salt Lake County, Hon. A. N. Cherry, *Judge.*

Application in the district court for a writ of mandate to compel the defendant board of education to admit Florence Cox, a female of the age of ten years, to a certain school in said city, as a pupil.   Admission was

denied on account of non-vaccination, and the prevalence of smallpox in the city of Salt Lake.  A demurrer to the answer of defendant setting up the prevalence of the disease, the existence of certain health boards, the adoption of certain resolutions, etc., in alleged aid of the public health, was sustained and a peremptory writ of mandate granted.  Defendants appealed.  *Reversed.*

*Messrs. Richards & Varian*, attorneys for appellants.

The police power of the State is large and expansive enough to meet and satisfy all demands upon the government in this respect.  The power is only restricted by the limitations of the constitution.  *Commonwealth* v. *Alger*, 7 Cush. p. 85; Prentice on Police Powers, p. 7; *People* v. *Budd*, 117 N. Y., 29; *State* v. *Holden*, 14 Utah, p. 95; Justice Gray *in re* Smith, 146 N. Y., 68, 28 L. R. A., 823; *Love* v. *City of Atlanta*, 95 Ga., 133; 22 S. E., 30.

The duty to preserve the public health and guard against the spread of contagion and infection, is enjoined upon the local authorities, who are directed to take such measures as shall be necessary to accomplish the purpose sought, and, of necessity the decision whether an emergency exists, is left to them.  In the large and comprehensive matter of the exercise of the police power for the preservation of the public health, it would be impossible for the Legislature in advance to provide for all emergencies and prescribe remedies to be applied by the local boards or municipal bodies.  If, in the known state of medical science of to-day, there is a known and accepted preventive and protective remedy against any infectious and contagious disease, the power to apply such remedy to the exclusion of others could not be enjoined upon the local authorities by general statute, which is to stand

until the Legislature shall convene again, since it may well be, that when the emergency for the exercise of the power given shall arise, another and better will have been discovered. Consequently such matters were always in the early days of the common law, as well as in later times, left to the determination of the local authorities, and by the delegation of such powers it has never been deemed that the Legislature abdicated its authority. Cooley's Const. Lim., 3d ed., p. 191; Am. and Eng. Ency. Law, Vol. 15, p. 1173; Sutherland Statutory Constitution, Sec. 67, note Sec. 70; Prentice on Police Powers, p. 132.

We shall endeavor to show that the statutes have conferred ample authority upon the boards of health and the board of education, to make and enforce rules and regulations, under which the relator's child was excluded from the Hamilton school. The original charter of the city empowered the council. C. L., Vol. 1, Sub. 40, Sec. 344, p. 345; C. L., Vol. 1, Sec. 1755, par. 64, p. 628; Compiled Laws, Vol. 1, Sec. 1817.

On May 20, 1890, the city council, by ordinance, created a local board of health, consisting of a health commissioner, a city physician, and two other citizens, with the mayor added, as ex-officio chairman. (Revised Ordinances, 1892, p. ·126.)

At the same session it enacted an ordinance defining duties and powers of the board of health. Revised Ordinances 1892, Chap. 5, p. 133.

*Messrs. Bennett, Harkness, Howat, Sutherland & Van Cott*, attorneys for respondent.

*Messrs. Harrington & Snow*, and *Messrs. Powers, Straup & Lippman*, of counsel.

Neither boards of health nor boards of education have a right to exclude unvaccinated children from

schools, unless express authority is given by the Legislature or ordinance to that effect.

It is a general principle of construction that the powers of these municipal bodies are strictly construed and all doubts are resolved against them.    1 Dill. Mun. Cor., Sec. 91; *State of Wisconsin, ex rel., Adams* v. *Burdge*, 37 L. R. A., 157; *Pots, et al.,* v. *Breen*, 39 L. R. A., 152, (167 Oll., 67); *Morris, et al.,* v. *City of Columbus*, 42 L. R. A., 175 (Ga.); see also *Duffield* v. *Williamsport School District*, 25 L. R. A., 152 (162 Pa., 476).

The distinction between delegating *legislative authority* and delegating a *discretion*, as to the execution of legislative authority, is well defined.    It is held that where the Legislature passes a law, and delegates a discretion as to *when*, *where*, and *how* the same shall be executed, that such delegation is valid; but if the right is delegated as to what the law shall be, then such delegation is void.    In the case at bar, as held in the cases heretofore cited, the health board is passing rules which in effect are legislative enactments.    *Dowling* v. *Ins. Co.*, 92 Wis., 70.    To the same point see 37 L. R. A., 160–1; 39 L. R. A., 155; 88 Cal., 491.

"It is for the Legislature to determine what is for the public good, and what are necessary and salutary burdens to impose upon a general class of persons to prevent the spread of disease, and its discretion can not be controlled by the courts, if its action is not clearly evasive and unlawful, under pretense of lawful authority."    *Abeel* v. *Clark*, 84 Cal., 227.

Counsel for appellants claim that this is not a case of compulsory vaccination, as children may stay out of school if they do not desire to comply with it; but this is an evasion, because a thing *is* compulsory when a person is stripped of his statutory rights and privileges for noncompliance.    42 L. R. A., 180.

The respondent filed his petition in the district court asking that a writ of mandate issue against appellants to compel the board of education of Salt Lake City to admit Florence Cox, a female of the age of 10 years, to the Hamilton school in said city as a pupil. The answer alleged, among other things, that the State board of health had been created, having general supervision and interest in the health of the citizens of the State and matters of quarantine, and that a local board of health had been created in Salt Lake City, with power to declare quarantine against the spread of any contagious disease prevailing in Salt Lake City, and to exclude from schools all persons liable to carry contagious diseases to pupils in attendance upon such schools; that the city council, in accordance with its authority, had passed the following resolution:

"The board of health shall exercise general supervision over the health of the city, and effect all measures necessary to promote the health and cleanliness thereof. * * * It shall take all due measures to prevent the introduction or spread within the city, or within five miles thereof, of any malignant, contagious, or infectious diseases, and remove, quarantine, or otherwise dispose of any person or persons, clothing, or effects attacked with or having been exposed to such diseases, and shall adopt such rules and regulations necessary to prevent the introduction or spread of malignant, contagious, or infectious diseases within the city or within five miles thereof."

It is further alleged that the disease of smallpox was contagious and infectious, and included types of the most malignant and deadly character; that such disease may be brought and carried from one community to another by

persons who have been exposed to the contagion; that the only known preventive of smallpox is vaccination of persons with animal lymph or vaccine matter; that such preventive is the only one recognized and approved by medical science and generally by governments throughout the civilized world; that about the 1st of November, 1899, smallpox was brought into this State and developed in a patient at Sterling, in San Pete County, and since then it has spread and developed in many places, and in different parts of the State, about 200 cases being traced directly to the first case at Sterling; that such disease was now epidemic in Eureka, Spanish Fork, Emery County, Sevier County, San Pete County, and in at least 24 towns in the State of Utah; that Salt Lake City is connected by railroads running daily trains carrying passengers to and from said localities thus infected; that there has been a number of cases of smallpox within the city of Salt Lake during the last two months; that sixteen developed cases of smallpox are now within the city pest house, and that a large number of persons within the city have been exposed to the contagion; that smallpox was liable to become an epidemic in the State, that the university of the State, and many of the Sunday-schools and other places of resort had been closed; that about 12,000 school children are enrolled in the public schools of the city, and reside in different parts thereof, less than one half of whom are vaccinated; that smallpox ordinarily develops in from ten days to two weeks after the patient is infected, and until then there are no means by which its presence can be detected; that therefore the regulation excluding all unvaccinated pupils from attending and meeting together in public schools is reasonable, and in aid of the health of the child; that in view of the danger of the contagious disease, the State board of health on December 20, 1899, resolved, "that

the secretary so advise the proper authorities of each town where the disease exists, to immediately enact rules requiring that all children that can not show signs of successful vaccination shall be vaccinated before they shall be allowed to enter any public school; also that said local authorities shall compel vaccination of all other persons whom they have reason to believe have been or may be exposed directly to the disease."

On January 4, 1900, the local board of health adopted and sent to the local board of education the following resolution: "The board of health recommend that the board of education close the public schools for a period of thirty days, and that general vaccination be observed." The above resolution was adopted by the board of education. Thereupon free vaccination was provided by the local authorities of the city to all who desired it.

On January 15, 1900, the local board of health adopted the following resolution:

"That the public and all other schools in Salt Lake City be, and the same are, hereby directed to enforce the rule that vaccination be necessary for admittance to said schools; and we also hereby direct that the board of education of Salt Lake City enforce the rule requiring the certificate of successful vaccination from a qualified medical practitioner, or the local board of health, before any teacher or pupil be admitted to attend said school."

On January 20, 1900, the board of education passed the following resolution:

"(1) That the schools of this city re-open on Tuesday, January 23d, 1900.

"(2) That no principal, teacher, pupil, or employee be allowed to attend any school of the city, unless he or she be provided with a certificate from a qualified medical practitioner, or the board of health of Salt Lake City, that vaccination has been performed.

" (3) That the superintendent of schools be, and he is, hereby given full power and authority to enforce the necessary rules, and carry into effect this ordinance."

That said resolution of the board of education and directions and resolutions of the local board of health were put in force, and all pupils not complying therewith were excluded from the schools; that Florence Cox, respondent's daughter, not having been vaccinated and exhibiting no certificate of vaccination, was for that reason excluded from said school under the rules and requirements of the board of health.

A demurrer was interposed to the above answer, which was sustained by the court, and a peremptory writ of mandate was ordered to issue. From this order and judgment the defendants appeal to this court.

MINER, J., after stating the facts, delivered the opinion of the court.

Among other provisions of the statute empowering local boards of health to preserve the public health, are the following:

Sec. 1105, R. S., provides: The city council must establish a board of health for the city, whose chief executive officer shall be a graduated physician of a legally chartered medical college.

Sec. 1110, R. S., provides: " Any local board of health may declare quarantine in its county, city, or town or any part thereof, against a contagious or infectious disease prevailing there or elsewhere, and against all persons and things likely to spread contagion or infection. Each of such boards shall have power and authority to enforce such quarantine until the same is raised by it, and may confine any person affected with it or likely to spread contagion or infection to the house or premises in which he resides, or to a place to be provided by the board for the purpose."

Sec. 9, Ch. 45, Laws 1899, p. 67, reads as follows:

"The necessary rules and regulations concerning cholera, smallpox, * * * and other contagious and infectious diseases, shall be enforced by the local boards of health under the supervision of the health officers; and all public officers of the town, city, or county, in their proper capacities, are hereby commanded and enjoined to assist the said board of health in the enforcement of said rules and regulations."

Sec. 24, Chap. 45, Laws 1899, p. 70, reads as follows:

"Local boards of health shall have jurisdiction in all matters pertaining to the preservation of the health of those in attendance upon the public and private schools in the city, to which end it is hereby made the duty of each of the local boards of health —

(1) To exclude from said schools any person, including teachers, suffering with any contagious or infectious disease, whether acute or chronic, or liable to convey such disease to those in attendance." * * *

The following ordinance was enacted by Salt Lake City; Rev. Ord. 1892, p. 126:

" The board of health shall exercise general supervision over the health of the city, and affect all measures necessary to promote the health and cleanliness thereof. * * * It shall use all due measures to prevent the introduction or spread within the city, or within five miles thereof, of any malignant, contagious, or infectious diseases, and remove, quarantine, or otherwise dispose of any person or persons, clothing, or effects attacked with, or having been exposed to, such disease, and shall adopt such rules and regulations necessary to prevent the introduction or spread of malignant, contagious, or infectious diseases within the city or within five miles thereof."

On the argument of this case no question was raised

but that an emergency existed for calling into exercise such powers as were possessed by the board of health in order to prevent the threatened spread of smallpox, nor are the rules and regulations prescribed by the board attacked as unreasonable or unnecessary. The demurrer admits the allegations in the answer to be true so that the single question for determination is, whether the statute confers authority upon the board of health to prescribe and enforce the rule excluding unvaccinated pupils from school during the prevalence of smallpox, and so long as the emergency continues?

In endeavoring to prevent the spread of an infectious disease known to be dangerous, the board of health acted in the performance of its highest duty to the people of the city of Salt Lake. To neglect such known duty, when imposed, would be reprehensible. The great duty of all governments is the welfare and happiness of its people. Without health a community can not well enjoy happiness or become prosperous and contented. To secure public health an imperative obligation rested upon the city, through its proper board of health, to take all necessary steps to prevent the spread of contagious diseases. The emergency demanded immediate action, and the resolutions adopted were in compliance with what seemed to be necessary for the safety of the people and the public health. That the requirement was reasonable, and that exigencies for its enforcement was actual and necessary for the protection of the public from the consequences of such dread disease, is admitted.

Under Sec. 24, above quoted, the board of health had power to preserve the health of those in attendance upon schools and to exclude from school any person suffering with contagious disease, or who was liable to convey such disease to those in attendance upon said school.

The conceded facts show that many people were suffer-

ing with the disease within the State; that the disease developed within ten days or two weeks after the patient was affected;. that until it has developed there are no means by which its presence can be detected; that the several boards of health in the State had taken precautions against its spread; that over 12,000 children were in attendance upon the public schools in the several parts of the city, where such contagion existed, less than one half of whom had been vaccinated; that all the smallpox cases in Salt Lake City, and other parts of the State, numbering over 200 cases, were traced to the one case arising at Sterling, San Pete County, and that in certain parts of the state the disease had become epidemic. Under such circumstances the natural presumption follows that it is liable to spread into the schools unless controlled or eradicated.

Vaccination is shown to be the only safe preventive recognized and approved by medical science and by governments throughout the world. To allow children from all parts of the city to congregate together at school would seem a ready way to communicate the disease to others. To allow the child in question to attend school without conforming to the requirements of the board would, under the circumstances shown, be liable to carry such disease to other children, or to those in attendance upon the schools. Exposure to the disease may come to the child without her knowledge, and when least expected. When infected, the child may communicate the disease to hundreds of children before the patient is aware she is infected with it. Under such circumstances, the rule excluding all unvaccinated pupils from attending and meeting together in the public schools, is not only a reasonable regulation of the board of health in aid of the promotion of the public health, but justified by a rea-

sonable construction of the statutes of this State which empower the board to exclude those who are liable to convey such infectious disease as smallpox, to those in attendance thereon.

The duty to preserve the public health and guard against the spread of contagious and infectious diseases is by law imposed upon all boards of health, and they are required to take such means as may accomplish the purposes to be sought within the rules of law, and penalties are imposed upon those who disobey such rules. If an emergency exists, the remedy is left to them. Such boards have general power under the statute to promptly and effectually protect all persons from impending pestilence and disease. The exercise of the power is controlled, however, and when called upon, the board must show that its acts are justified by the facts in the case.

When the board of health and the board of education resolved that no pupil should be admitted to the schools without having been vaccinated, and it appears that an emergency existed, and that the disease of smallpox was prevalent and contagious, the resolution must be held to be within the provisions of Section 24, Ch. 45, Laws 1899, p. 70, and other sections referred to, wherein it is made the duty of the board of health to exclude from the schools any person suffering with any contagious or infectious disease, or liable to convey such disease to those in attendance thereon. In passing and enforcing this resolution the board did not attempt to compel the respondent's daughter to be vaccinated. It simply gave the option to be vaccinated or remain out of school until the danger from smallpox had passed.

So the duty imposed upon boards of health finds ample support in the police power which is inherent in the State, and it is one which the State can not surrender. It has

wide range.   It is exercised in order to promote health, comfort, safety, good morals, and the general welfare of the people.   It is not necessarily derived from the written constitution.   It is invoked for the public good, and not to deprive a citizen of his constitutional right.

In the case of *Gerhardt* v. *State*, 145 Ind., 439, it is said:

"The police power of a State is recognized by the courts to be one of wide sweep.   It is exercised by the State in order to promote the health, safety, comfort, morals, and welfare of the public.   The right to exercise this power is said to be inherent in the people of every free government.   It is not a grant derived from or under any written constitution.   It is not, however, without limitation, and it can not be invoked so as to invade the fundamental rights of a citizen.   As a general proposition, it may be asserted that it is the province of the Legislature to decide when the exigency exists for the exercise of this power, but as to what are the subjects which come within it is evidently a judicial question."   *Champer* v. *City of Greencastle*, 138 Ind., 339; *Blue* v. *Beach*, 56 N. E. Rep., 87; *State* v. *Gerhardt*, 145 Ind, 439.

When boards of health adopt rules or by-laws by virtue of legislative authority, such rules and by-laws within the respective jurisdictions have the force and effect of a law of the Legislature; and like an ordinance or by-law of a municipal corporation, they may be said to be in force by virtue of the statute."   *Blue* v. *Beach*, 56 N. E. Rep , 87; *City of Salem* v. *Eastern R. R. Co.*, 98 Mass., 431; *Board* v. *Hesiter*, 37 N. Y., 661; *Gregory* v. *Mayer*, 40 N. Y., 273; *Dingley* v. *City of Boston*, 100 Mass., 544; *Swindwell* v. *State*, 143 Ind., 153; 4 Am. & Eng. Ency. of Law (2d ed.), 599.

Under a general grant of power to a local board of

health imposed by statute, the board has power to make all proper rules and ordinances for the government and management of schools, and to regulate and exclude therefrom those liable to convey disease to those in attendance. *In re* Rebenach, 62 Mo., App. 8; *Blue* v. *Beach*, 56 N. E. Rep., 87.

These local boards of health are created and empowered to act in order to promote the public health. As such they are empowered to adopt ordinances, and make rules and by-laws in order to more effectually reach the end desired; namely, the public health. The powers conferred are administrative only, yet such power as they have should receive a liberal construction by courts because of the great public interest confided to them. 4 Am. & Eng. Enc. of Law, 597; *Railroad* v. *James*, 10 Ind. App., 550.

No question as to the right of the city to delegate its delegated power arises in this case. The local board of health obtains its authority from the Legislature, although the city was required to appoint a local board of health. Under the law the board had power to protect the public health and prevent the spread of smallpox in the city schools, and for this purpose had the right to adopt such reasonable means and methods as its best judgment might dictate. Through its best source of information it was led to believe that vaccination was the best means to prevent the spread of the disease in the schools, and thereby afford protection to the pupils therein. Under its powers the board had the right to require that no unvaccinated child be allowed to attend the public schools during the prevalence of this disease. If vaccination was the most effective means of preventing its spread, as the record shows, then it became the duty of the board to require that pupils be vaccinated before entering, as a sanitary

condition imposed upon their privilege of attending school during the period of the threatened epidemic of smallpox. In many of the States laws have been passed expressly requiring vaccination as a privilege of attending school.

In other States courts have held under the police power of the State that boards of health would have the power to compel vaccination as a condition of entering school.

In *Able* v. *Clark*, 84 Cal., 226, it was held that a statute requiring that all children attending public schools should be vaccinated, was constitutional.

In *Bissell* v. *Davidson*, 65 Conn., 183, the law requiring children to be vaccinated as a condition for the privilege of entering school, was held constitutional.

In *Duffield* v. *School District*, 162 Pa. St , 476, the city ordinance provided that no pupils should attend school except they be vaccinated or furnish a certificate of a physician that vaccination had been performed. During an epidemic the school board adopted a similar resolution. The power to exclude appellant's son from the schools was upheld by the court.

*In re* Rebenach, 62 Mo. App., 8, the court held that the school board had the right to require vaccination of children in attendance at schools, and to exclude those therefrom who refused to comply with the order requiring such vaccination. In this case the power was exercised under the general authority to make rules for the proper government of schools. The court said: "Whether Section 2884 of the general school law, which invests school boards in this State with power to exclude all children from the schools, who are liable to transmit infectious or contagious diseases has any application to this board, is really immaterial. No one would for a moment question the existence of such power in the board under the general grant to make all proper rules, ordinances, and stat-

utes, for the government and management of the schools."
It appears in this case that the president and directors of
the public schools had the general power to make all rules,
ordinances, and statutes proper for the government and
management of such schools, etc., so that the same
should not be inconsistent with the laws of the land.

In *Morris* v. *City of Columbus*, 102 Ga., 792, it is
held that the Legislature in the exercise of the police power
may confer upon municipal corporations the authority to
make and enforce ordinances requiring all persons who
may be within the limits of such corporation, to submit
to vaccination whenever an epidemic of smallpox is exist-
ing or may be apprehended.

In Parker & W. Pub. Health, Sec. 123, the rule is
stated as follows: "It is sometimes provided by law that
persons who may have been exposed to contagion, or who
come from places believed to be infected, and particularly
children attending the public schools, shall submit to vac-
cination under the direction of the health authorities.  This
requirement is a constitutional exercise of the police power
of the State, which can be sustained as a precautionary
measure in the interest of the public health."

The supreme court of Massachusetts, in the case of the
*City of Salem* v. *Eastern R. Co.*, 98 Mass., 443, in
speaking of the right of boards of health to make general
orders, and enforce them without unnecessary delay, said:
"Their action is intended to be prompt and summary.
They are clothed with extraordinary powers for the pro-
tection of the community from noxious influences affecting
life and death, and it is important that their proceedings
should be embarrassed or delayed as little as possible by
the unnecessary observance of formalities."

In *Blue* v. *Beach*, 56 N. E. Rep., 89, it appears that
under a general statute requiring the board of health to

21 Utah — 27.

adopt by-laws to prevent the spread of contagious diseases, and where it also appeared that a smallpox epidemic was threatened, the local board of health made an order requiring that no unvaccinated child be allowed to attend the public schools during the prevalence of the disease, it was held that an unvaccinated child was properly excluded during that time, although it was well and healthy, and had never been exposed to the disease.

The order to exclude the child arose from a reasonable apprehension on the part of the board that smallpox would become epidemic in Salt Lake City. The order made had no effect beyond the existence of the emergency. The order did not require the child to be vaccinated. She should only be excluded from school upon her refusal to be vaccinated, until danger from an epidemic had passed. Compulsory vaccination in any other sense than that the child should be excluded from school if she refused to be vaccinated, was not intended by the board. Nor was compulsory vaccination authorized by statute. But the board had power to prevent one person from infecting another with smallpox.

It is true that under our laws a child has a right to attend school, but this privilege may be lost by misconduct, or refusal to obey the rules, or submit to proper school discipline. "If expulsion can result from the violation of a rule, the object of which is to promote the morals of the scholars, and the efficiency of the school in general, certainly one which is intended and calculated to promote the health of the scholars ought to be sustained."

I am constrained to uphold the order of the local board of health of the city of Salt Lake as a valid exercise of power upon its part, and therefore hold that the board of education and Samuel Doxey, having charge of the school

in question, were justified in excluding the respondent's daughter from the public school during the prevalence of the contagion and continuance of the emergency and danger from smallpox.

The order of the district court in sustaining the demurrer to the answer and granting the peremptory writ of mandate is reversed, and the cause is remanded, with directions to overrule the demurrer and deny the writ prayed for in the complaint, and dismiss the complaint.

The appellants are entitled to costs.

BARTCH, C. J., concurs.

BASKIN, J., Dissenting Opinion.

In the opinion of the majority of the court it is correctly stated that "the single question for determination is, whether the statute confers authority upon the board of health to prescribe and enforce the rule excluding unvaccinated pupils from school during the prevalence of smallpox, and so long as the emergency continues."

It is conceded by counsel, that if the local board of health possessed the authority to pass and enforce the resolution ordering the schools to be closed, then it was the duty of the board of education to obey the same.

Whether the local board of health of Salt Lake City had such authority, depends upon the provisions of the constitution and the acts of the Legislature relating to the subject.

Sec. 5, Art. 11, Const., provides that, "The Legislature, by general laws shall provide for the incorporation, organization, and classification of cities."

There is no provision of the constitution defining the powers and duties of incorporated or organized cities. It was evidently the intention of the framers of that instru-

ment to leave the Legislature free to prescribe the powers and duties of cities in the general laws referred to in said section.

At the date of the formation of the constitution such a general law of the territory was in force, and by Section 2, Art. 24, Const., it was provided that, "All laws of the Territory of Utah now in force, not repugnant to the constitution shall remain in force until they expire by their own limitation, or are altered or repealed by the Legislature."

Sec. 64, Ch. 9, Art. 4 of the general act (Comp. Laws, 1888, p. 628) provides, the city council shall have the following powers: "To make regulations to secure the general health of the city, to prevent the introduction of contagious, infectious, or malignant diseases into the city, and to make quarantine laws and enforce the same within the corporate limits, and within twelve miles thereof. To create a board of health, and prescribe the powers and duties of the same."

This general law has not been repealed, but has been altered by the addition of subsequent provisions, hereinafter referred to.

Salt Lake City was re-organized and re-incorporated under this general law, and possesses by virtue of said provisions of the constitution, all the powers granted by that general law, and such as have been subsequently added thereto by the State Legislature.

Sec. 1105, Rev. Stat., provides that "It shall be the duty of the board of trustees or city council of any incorporated town or city of the State to establish by ordinance a board of health for such town or city;" and Section 1109 provides that "It shall be the duty of the board of trustees of every incorporated town, and of the city council of every incorporated city, and of the board of county

commissioners of each county in the State, to establish by ordinance such sanitary rules and regulations as may be necessary to promote the general health, and to prevent the outbreak or spread of infectious or contagious diseases; and to provide penalties for the infraction of any of such ordinances.'' The majority opinion makes no reference whatever to this section. By this section it is made the mandatory duty of Salt Lake City, first by ordinance, to establish a board of health, and second, *by ordinance to establish such sanitary rules as may be necessary*, etc., and by Sec. 9, Chap. 45 of the session laws of 1899 (which evidently has reference to such necessary rules and regulations as may be established under the requirements of Section 1109, and was evidently passed to make it the mandatory and ministerial duty of the local boards of health to enforce such rules), it is provided that ''The necessary rules and regulations concerning cholera, smallpox, yellow fever, diphtheria, scarlet fever, typhoid fever, whooping cough, measles, and other contagious and infectious diseases, shall be enforced by the local boards of health, under the supervision of the health officer; and all public officers of the town, city, or county, in their proper capacities, are hereby commanded and enjoined to assist the said board of health in the enforcement of said rules and regulations.''

Certainly this section does not authorize the board to make sanitary rules and regulations. The only authority therein conferred is to execute the sanitary rules and regulations established by the city council.

It does not appear from the record whether Salt Lake City has made any sanitary rules or regulations.

The only sections of the statutes quoted or referred to in the majority opinion, in support of the authority of the board of health, are Sections 1105 and 1110 of the

revised statutes; Sec. 9, Ch. 45, laws of 1899, p. 67, and Section 24, Ch. 46, laws of 1899, p. 70.

Sec. 1105 requires the city council to establish a board of health. Sec. 9 (which I have before quoted) requires the board of health to enforce the necessary rules and regulations concerning cholera, smallpox, etc. The necessary rules and regulations referred to in that section are only those which are or may be established in pursuance of the mandatory duty imposed upon the board of trustees or city council of any incorporated town or city, by Sec. 1109 of the revised statutes.

Sec. 24 confers the following authority: "The local boards of health shall have jurisdiction in all matters pertaining to the preservation of the health of those in attendance upon the public and private schools in the State, to which end it is hereby made the duty of each of the local boards of health, (1) 'to exclude from said schools *any person, including teachers, suffering with any contagious or infectious disease, whether acute or chronic, or liable to convey such disease to those in attendance.*"

This section is the only one among those quoted by my associates which in the slightest degree tends to establish the authority of the board of health to require the exclusion from the schools of all pupils who have not been vaccinated.

The act containing this section is entitled "An act providing for the suppression of nuisances and contagious diseases, prescribing quarantine rules and regulations therefor, and relating to burial permits and health of schools."

When said section is viewed in the light of others contained in this act, and of Sec. 1110 of the Rev. Stat., it is clear that it does not authorize the exclusion from the schools of unvaccinated children, but that it was

intended to apply to individuals affected with the diseases mentioned, and to such other persons who by reason of having been, in some way, directly exposed to the contagion or infection mentioned, were rendered liable to immediately infect others by associating with them. It certainly was not intended to apply to the whole of a class, composed of thousands of children, no one of whom could be shown to have been exposed to contagion in a way that rendered him or her liable to communicate an infectious disease.

In Sec. 10 of said act it is provided that "*No person or thing liable to propagate any of the contagious diseases* enumerated in the above section, shall be brought within the limits of the State without the special permit and direction of the State board of health, and whenever it shall come to the knowledge of any person that such person or thing has been brought within such limits, he shall immediately give notice thereof to a member of the said board, together with the location thereof. No person shall, within the limits of the State, without a permit from the local board of health, carry or remove from one building to another any person afflicted with such contagious disease. *Nor shall any person afflicted with such contagious disease, or liable to communicate or spread the contagion thereof,* be shipped or removed from one town or place to any other town or place, except under the charge and direction of the board of health, and with proper precautions against the spread of the contagion." The diseases embraced in this section include smallpox.

In Sec. 1110, Rev. Stat. it is provided that, "Any local board of health may declare quarantine in the county, city, or town, or any part thereof, against a contagious or infectious disease prevailing there or elsewhere, and against

all persons and things *likely to spread contagion or infection.*"

By comparing the language italicized in the sections just quoted, with the language italicized in Section 24, it will be readily seen that they are in substance exactly the same.

If the prevalence of smallpox in a city renders the school children who are not vaccinated liable to convey this disease to the attendants at the school, it follows that every person in the city who is not vaccinated is equally liable to communicate this disease to those with whom they habitually associate.

Under the construction given, in the majority opinion, to the provisions of the statute quoted, the board of health of the city, as Sec. 1110 provides, "may declare quarantine against all persons and things likely to spread contagion or infection," has authority during the prevalence of smallpox, to quarantine all persons who are not vaccinated, and prevent them from attending church, Sunday school, or any other gathering; prevent them from appearing on the crowded streets, or entering crowded cars, and as Sec. 10, Ch. 45, Laws of 1890, provides that no person afflicted with a contagious disease, or *liable to communicate or spread the contagion thereof* shall not be shipped or removed from one town or place to another, except under the charge and direction of the board of health, it has authority to prevent any person not vaccinated from being so shipped or removed, and as said section also provides that no *person*, *or thing* liable to *propagate* any of the contagions mentioned, among which is smallpox, shall be brought within the State, without the special permit and direction of the State board of health, that board has authority to exclude any person who is not vaccinated, from entering the State, during the prevalence of small-

pox, because any such person upon entering the State and going to a locality where smallpox prevails, is as liable to propagate the disease as any other person.   No such results as those mentioned, and which are permissible under the construction of said provisions by my associates, was intended by the Legislature.   The intention of these provisions are just as plain as the provisions of Section 24 regarding the schools, and neither was intended to apply to classes of persons, but all were intended to apply, only, to individual cases of persons afflicted with the disease mentioned, and to such other individuals, who, by reason of having, in some way, been so exposed to the contagion of such diseases, as to render them directly liable to immediately (not remotely) infect others with whom they associate.

There is nothing in the record of this case indicating that the respondent's daughter was afflicted with any such disease, or that she had been exposed to any contagion or infection which rendered her liable to directly communicate any disease to others.   She was not excluded on the ground that she had been so exposed, but only because she belonged to a class of several thousand pupils who had not been vaccinated.

It is stated in the majority opinion that "vaccination is shown to be the only safe preventive recognized and approved by medical science."

It has neither been shown nor recognized by medical science that vaccination is a sure preventive, and while a large majority of the medical profession recognize its utility as a preventive, and recommend its use, but few, if any members of that profession claim that it is a certain protection against the contagion of smallpox.   That vaccination is frequently inefficient, experience has shown, for the instances of vaccinated persons having been infected

with smallpox are numerous. Therefore many of the six thousand, or more children who were permitted to attend the schools, were liable to be infected with that disease and just as liable to convey the disease to others attending the schools, as the children who were excluded, so that the danger sought to be avoided was not remedied.

The parents of the excluded pupils, by the payment of taxes, contributed equally to the school fund with the parents of the children who were admitted, and were lawfully entitled to have their children share in the benefits of the public schools. Therefore in the absence of express provisions of the statute clearly and explicitly authorizing it, the board had no authority to pass any resolution depriving any of the pupils, unless they yielded to the unauthorized requirement of vaccination, of the benefits of the public-school fund. Such a discrimination and violation of personal rights is unwarranted under the statutes of this State. The danger which existed on account of the prevalence in the city of smallpox might have justified the closing of the schools, but was no justification for such discrimination.

In support of the authority of the board, the majority opinion quotes an ordinance of the city, which authorizes the board to adopt such rules and regulations necessary to prevent the introduction or spread of malignant, contagious, or infectious diseases within the city, or within five miles thereof.

As the constitution contains no provisions regarding sanitary rules and regulations, it is clear that the power to establish such rules and regulations is vested in the State Legislature by virtue of the general sovereignty of the State. In the exercise of this power, the provisions of the constitution must not be violated or individual liberty be unnecessarily restricted. As stated in the majority opinion, "This power is not without limitation,

and can not be invoked so as to invade the fundamental rights of a citizen.'' (See cases cited in that opinion.)

This power, as a general rule, can not be delegated, yet under the provisions of the constitution before mentioned, the Legislature may delegate this power to incorporated towns or cities, but when so delegated, it can not be re-delegated by such town or city to any other body. To do so, as has been attempted by Salt Lake City, in the ordinance referred to, would be the disregard by said city of a duty, the discharge of which the Legislature has peremptorily enjoined upon and delegated to it. Dillon Mun. Corp., Sec. 96.

The duties of the respective boards of health of the State prescribed by the statutes, are simply ministerial, and in no sense legislative in their character. Their duties pertain exclusively to the enforcement of the sanitary rules and regulations established by the bodies legally authorized to enact sanitary rules and regulations. These boards, may, however, establish proper rules and regula_ tions to aid them in the discharge of their ministerial duties, but beyond this, their duties to make rules and regulations do not extend. They have no authority to determine what shall be accomplished by sanitary measures. No bodies, except those which have been authorized by statute to establish sanitary rules and regulations, have authority to determine that matter. This view is sustained by many of the authorities cited by my associates.

Among those cited is the case of *Blue* v. *Beach*, 56 N. E., 87. In that case the court says: '' It is true, beyond controversy, that the legislative department of the State, wherein the constitution had lodged all legislative power, will not be permitted to relieve itself of this power by the delegation thereof. It can not confer upon any body or person the power to determine what the law shall be,

as that power is one which only the Legislature, under our constitution, is authorized to exercise, but this constitutional inhibition can not properly be extended so as to prevent the grant of legislative authority to some administrative board or other tribunal to adopt rules, by-laws, or ordinances for its government, or to carry out a particular purpose."

The cases cited in the majority opinion do not support the same because the facts in each of said cases were radically different from the facts in the case at bar. In none of these cases had the board of health exercised, as was done in this case, powers which the Legislature had delegated to another body to exercise; nor had such body, as in the case at bar, re-delegated these powers to the board of health.

I most heartily concur with all that is said in the opinion of the majority regarding the utility and necessity of proper sanitary measures, and I have no doubt but that vaccination is very beneficial both in diminishing the chances of infection by smallpox and rendering the disease less virulent and dangerous, but these considerations are irrelevant. The sole question involved is whether the board of health possessed the authority which they exercised.

The action of the board was an attempt, indirectly, to make vaccination compulsory. This can not be done, either directly or indirectly, in the absence of plain and explicit authority of the Legislature. If indirect measures can be resorted to, to compel school children to submit to vaccination, the board of health, under the decision in question, also has power to resort to quarantine and other indirect means to enforce compulsory vaccination, generally.

For the reasons stated I can not concur in the reversal of the judgment.