[No. 2130-1. Division One. April 22, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. HARLAN A. WALKER, *Appellant.*

*Moschetto & Alfieri* and *Michael R. Alfieri,* for appellant.

*Robert E. Schillberg, Prosecuting Attorney,* and *Darrell L. Syferd, Deputy,* for respondent.

CALLOW, J.—The defendant appeals from a conviction, after a trial to the court, of felonious delivery of a controlled substance.

On April 6, 1972, the Snohomish County Sheriff's Department and the Everett Police Department had information that the defendant was involved in activity in connection with the delivery of controlled substances. The law enforcement agencies contacted a state patrol officer who was a member of the State Patrol Drug Control Assistance Unit. Thereafter, the Everett Police Department and the patrol officer, in his capacity as an undercover agent, made plans to have the patrol officer contact the defendant and attempt to purchase drugs from him. The patrol officer was provided with an informer who would introduce him to the defendant.

The undercover patrol officer and the informer went to the house of the defendant and the informer introduced the officer to him. The defendant submits that it was the sole purpose of the law enforcement officers to induce the defendant to make the sale so they could arrest him for commission of the felony. After conversations regarding the availability of amphetamines, it was agreed that the defendant would attempt to secure some "speed"; and it was suggested by the defendant that the informer and undercover patrol officer return approximately 2 hours later to purchase the "speed." The officers returned at the appointed hour and bought the "speed" for $10 from the defendant.

The trial court found:

The agent testified that he was careful to avoid making an initial offer to buy. The defendant testifies that the initial offer was made by the agent. There was no persuasion by the agent beyond the possibility that the first offer was made by the agent.

The trial court entered conclusions of law as follows:

I

That Harlan A. Walker, in the county of Snohomish, state of Washington, on the 6th day of April, 1972, did willfully, unlawfully and feloniously deliver a controlled substance, DL Amphetimine [sic] to another.

II

Even if the initial offer to buy a controlled substance was made by a law enforcement agent, this fact alone, unsupported by other evidence of persuasion on the part of the law enforcement officers, would not support a finding of entrapment.

III

That the activity of the police officers did not constitute entrapment.

The defendant assigns error to the finding set forth and to each conclusion of law.

The rules on entrapment have been set forth with consistency by the federal circuit courts of appeal. Illustrative of their pronouncements are the following:

*Martinez v. United States,* 373 F.2d 810 (10th Cir. 1967), stated at page 812:

> The principle of law involved is not complicated and may be simply stated. Entrapment occurs when the criminal design or conduct originates in or is the product of the minds of the government officials and is implanted by them in the mind of an otherwise innocent person. In the words of the Court in Sherman v. United States [356 U.S. 369, 372, 2 L. Ed. 2d 848, 78 S. Ct. 819, 821] . . . "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

*Cazares-Ramirez v. United States,* 406 F.2d 228, 230 (5th Cir. 1969) stated:

> In Jasso v. United States, 5 Cir. 1961, 290 F.2d 671, this Court had occasion to cite with approval the guidelines laid down by United States v. Sherman, 2 Cir. 1952, 200 F.2d 880, (per Learned Hand, J.) for determining the propriety of inducements to commit crime. The holding was that such inducements by government agents were proper where (1) there was an existing course of similar criminal conduct, (2) the accused had already formed a design to commit the crime, or (3) his willingness to do so was evidenced by ready compliance.

The defense of entrapment forbids law officers from implanting into the mind of an innocent person an inducement to commit a crime which he was not otherwise predisposed to perpetrate but allows enforcement agents to afford a person the opportunity to engage in misconduct when he was already so inclined. Even when there is a showing of inducement to transgress by another, a finding of entrapment is not warranted if the propensity to iniquity existed in the defendant and he acted, upon being given a propitious chance. *United States v. Nieves,* 451 F.2d 836, 837 (2d Cir. 1971); *Eisenhardt v. United States,* 406 F.2d 449, 450 (5th Cir. 1969). Thus, a decoy may be used to entrap a criminal but, as said in *United States v. Healy,* 202 F. 349 (D. Mont. 1913), not to create one. The defense is given to defendants not because proven inducement negatives criminal intent and thus establishes innocence but

because law enforcement officers should not be allowed to originate or implant criminal intent in the mind of another. "The defense does not so much establish innocence as grant immunity from prosecution for criminal acts concededly committed." *Carbajal-Portillo v. United States,* 396 F.2d 944, 948 (9th Cir. 1968). *See also* DeFeo, *Entrapment as a Defense to Criminal Responsibility,* 1 U.S.F. L. Rev. 243 (1967); Comment, *Entrapment in the Federal Courts,* 1 U.S.F.L. Rev. 177 (1966); Rotenberg, *The Police Detection Practice of Encouragement,* 49 Va. L. Rev. 871 (1963); Comment, *Administration of the Affirmative Trap and the Doctrine of Entrapment: Device and Defense,* 31 U. Chi. L. Rev. 137 (1963); Note, *Entrapment,* 73 Harv. L. Rev. 1333 (1960); Williams, *The Defense of Entrapment and Related Problems in Criminal Prosecution,* 28 Fordham L. Rev. 399 (1959); Note, *The Defense of Entrapment in California,* 19 Hastings L.J. 825 (1968); Annot. 33 A.L.R.2d 883 (1954); Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agents Provocateurs,* 60 Yale L.J. 1091 (1951); the delightfully titled Note, *The Serpent Beguiled Me and I Did Eat: The Constitutional Status of the Entrapment Defense,* 74 Yale L.J. 942 (1965); W. La Fave & A. Scott, *Criminal Law* § 48 (1972); R. Perkins, *Criminal Law and Procedure,* at 700-10 (4th ed. 1972); R. Perkins, *Criminal Law* § 9 (2d ed. 1969); Model Penal Code § 2.13.

■ The Washington cases have required proof of the same elements to establish the defense as required in the federal courts. Entrapment is a positive defense which assumes that the act charged was committed. The use of a decoy to present the opportunity to enact the crime does not constitute entrapment. Criminal design must be shown to have originated in the mind of the officer and not the defendant. The essence of entrapment as a defense is that the evidence must establish (a) an absence of propensity to commit the crime and (b) an inducement or persuasion from governmental authority to commit the crime. The absence of propensity to commit the crime must be interpreted as meaning a mind innocent of any natural inclina-

tion to do the act until the corrupt suggestion was implanted. Unless the evidence shows that the deed would not have been done but for the solicitous urging of a law officer, the defense has not been established. The innocence of the defendant must have been perverted by law enforcement illicitly importuning the naive into transgression. Stated in another aspect, in order for the defense to be proven, there must be a showing (a) that law enforcement lured or inveigled the defendant into doing the forbidden deed and (b) there preexisted in the defendant an absence of intent, inclination or tendency toward the commission of the offense. It is not enough to show only reluctance on the part of the defendant. *State v. Waggoner,* 80 Wn.2d 7, 490 P.2d 1308 (1971); *State v. Ensminger,* 77 Wn.2d 535, 463 P.2d 612 (1970); *Seattle v. Evans,* 75 Wn.2d 225, 450 P.2d 176 (1969); *Seattle v. Muldrew,* 71 Wn.2d 903, 431 P.2d 589 (1967); *State v. Curry,* 70 Wn.2d 383, 422 P.2d 823 (1967); *State v. Gray,* 69 Wn.2d 432, 418 P.2d 725 (1966); *State v. Moore,* 69 Wn.2d 206, 417 P.2d 859 (1966); *State v. Morgan,* 9 Wn. App. 757, 515 P.2d 829 (1973). *See also People v. Benford,* 53 Cal. 2d 1, 345 P.2d 928 (1959).

The record does not require the conclusion that the officers induced the defendant to commit a crime which he would not have committed but for the actions of the officers. The defendant was ready and willing to commit the crime, and the officer merely gave him the opportunity to do that to which he was predisposed. *Seattle v. Evans, supra; Seattle v. Muldrew, supra; State v. Easton,* 69 Wn.2d 965, 422 P.2d 7 (1966); *State v. Malone,* 69 Wn.2d 872, 420 P.2d 676 (1966); *State v. Gray, supra; State v. Moore, supra.*

The defense of entrapment does not raise constitutional issues unless the conduct of the law enforcement agents was so outrageous that due process principles would bar the use of judicial process to obtain a conviction. *United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973). In the *Russell* case, it was stated at page 430:

Unlike the situations giving rise to the holdings in *Mapp* and *Miranda,* the Government's conduct here violated no

independent constitutional right of the respondent. Nor did Shapiro violate any federal statute or rule or commit any crime in infiltrating the respondent's drug enterprise.

Respondent would overcome this basic weakness in his analogy to the exclusionary rule cases by having the Court adopt a rigid constitutional rule that would preclude any prosecution when it is shown that the criminal conduct would not have been possible had not an undercover agent "supplied an indispensable means to the commission of the crime that could not have been obtained otherwise, through legal or illegal channels." Even if we were to surmount the difficulties attending the notion that due process of law can be embodied in fixed rules, and those attending respondent's particular formulation, the rule he proposes would not appear to be of significant benefit to him. For on the record presented it appears that he cannot fit within the terms of the very rule he proposes.

(Footnote omitted.)

We do not find outrageous law enforcement conduct that has resulted in the instigation of criminal acts which the defendant would not have committed otherwise. *United States v. Russell, supra.* The inquiry is whether the trier of the fact could conclude from the evidence that the defendant had no intent to sell drugs until the intent was implanted in his mind and was induced into delivering the drugs through fundamentally unfair efforts by law enforcement officers. The function of enforcement officials is "to investigate, not instigate, crime; to discover, not to promote, crime." *Patty v. Board of Medical Examiners,* 9 Cal. 3d 356, 508 P.2d 1121, 107 Cal. Rptr. 473 (1973).

It has been observed that

Clearly entrapment is a facet of a broader problem. Along with illegal search and seizures, wire tapping, false arrest, illegal detention and the third degree, it is a type of lawless law enforcement. They all spring from common motivations. Each is a substitute for skillful and scientific investigation. Each is condoned by the sinister sophism that the end, when dealing with known criminals or the "criminal classes," justifies the employment of illegal means.

Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agents Provocateurs,* 60 Yale L.J. 1091, 1111 (1951). The evidence did not lead the trial court to find that the officers had crossed the line into the precluded area where it followed that the motivation to violate the law had come from government.

The oral opinion at the conclusion of the trial stated the crux of the defense as considered in the light of the evidence as follows:

> The defense of entrapment is essentially a defense whereby a person may not be induced into committing a crime merely for the purposes of being arrested for it. The concept being that law enforcement people cannot, obviously go out probing around the countryside, setting up situations in which innocents will be induced into committing crimes. The court is aware that there is a significant amount of public attention and a considerable amount of persons involved in the use and distribution of illicit drugs. It is inconceivable to me that a person who was not inclined to engage in this activity would be induced in a few minutes by a rather casual conversation to become engaged in an endeavor which is clearly and notoriously in violation of not only the laws, but against the mores of a considerable section of the community.

> I am mindful that in this particular case by his own admission the Defendant engaged with the informer in the procurement of drugs on previous occasions, at least on one previous occasion, and I am aware that the Defendant has had other instances where he has been involved in the possession, at least, of controlled substances. It is beyond credibility, beyond any limits for me to believe that the Defendant could have been induced against his will or against his better judgment to engage in this particular activity.

The evaluation by the trial court was supported by the evidence. The trier of the fact could find that the defense had not been established.

The judgment is affirmed.

SWANSON, C.J., and WILLIAMS, J., concur.