**STATE of Utah, Plaintiff and Respondent,**

v.

**Wendell H. HOFFMAN, Defendant and Appellant.**

**No. 14198.**

Supreme Court of Utah.

Dec. 28, 1976.

Richard I. Ashton, Salt Lake City, Frank O. Walther, Haverford, Penn., for defendant-appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, William W. Barrett, Asst. Attys. Gen., Salt Lake City, Robert L. Newey, Weber County Atty., Ogden, for plaintiff-respondent.

DON V. TIBBS, District Judge.

The defendant, Wendell H. Hoffman, seeks a reversal of his conviction on two counts 'of practicing medicine without a license, in violation of Utah Code Annotated, Section 58–12–30 (1953) as amended.

We affirm the conviction.

The Utah Department of Business Regulation received information the appellant was practicing medicine without a license. Agents were sent as patients, using assumed names, to obtain what purported to be medical treatment from appellant.

On August 9, 1974, after making an appointment with appellant, agents Linda Lambert and Scott Helm visited appellant at his office which was open to the public. Linda, feigning illness, told appellant she had been having severe stomach pains—high in her stomach—and weight loss. Appellant had her sit down, place her index finger in a circle drawn on top of a small plastic box. Appellant took a silver pendulum fastened on a chain and swung it several times over the box. Before swinging the pendulum, appellant placed lists of words in the circle which appeared to be types of diseases. When the disease of mercury poisoning was placed in the circle, the pendulum began to move radically and appellant stated that Linda had mercury poisoning. Appellant left the room, returning with a prepared mixture that smelled like vinegar water and told Linda to drink it.

Appellant told Linda and Scott that he had a twenty-four hour cure for cancer and he had a method of detecting cancer before it could be detected by X-ray or other methods. He stated that he had been offered an opportunity to do some research work at a hospital in California where he would be paid two hundred thousand dollars a year for his contribution.

Appellant talked about a lump or growth that Linda had on her collarbone and a beginning phase of cancer in her left breast. Appellant gave Linda several bottles of pills (nonprescription) to dry up the cancer and neutralize the mercury poisoning.

Appellant further mentioned that he could "broadcast" cures to various states in the Western United States. He stated that he could cure and had cured diseases outside of the immediate area by placing his

hand over magnets and turning the magnets toward the patient in the other city or state. By following this procedure, appellant claimed he could broadcast a cure through his body forces. Appellant charged Linda $35 for her visit.

On August 21, 1974, Linda and Flora Koski, a registered nurse (still using assumed names), went to appellant's premises. Using the same procedure as before, appellant stated that Linda did not have mercury poisoning any longer and that the tumors and cysts were drying up. However, appellant said that she had lead poisoning and arsenic poisoning. He also massaged her breasts to relieve an unidentified congestion.

Appellant also treated Flora, who was feigning illness, for fatigue. He told her that her high white blood count was an indication of Leukemia, that she had tumors in her lungs and intestines, two tumors in her pancreas, a severe heart condition, a bad heart and emphysema. Appellant charged Linda $71.50 for her visit.

On August 23, 1974, officers executed a search warrant on appellant's premises and removed the pendulum, three plastic pointers, dark brown loose-leaf, magnets, other articles sealed in a box, a plastic bucket, powder substance, plastic tongs and a receipt book.

The defendant does not deny that he hasn't a license to practice medicine in the State of Utah. He has filed voluminous legal authorities and briefs in support of contentions that his constitutional rights were violated.

The facts do not disclose a violation of any of the defendant's constitutional rights.

Appellant claims that the incognito use of government agents as potential patients violated his constitutional rights to privacy due process under Article 1, Section 7 and 14 of Constitution of Utah, and the 4th, 5th and 14th Amendments of U.S. Constitution.

The use of undercover agents is recognized in the criminal justice system. It is often the only way to detect and prevent criminal activity. The very nature of undercover work requires that the true identity and purpose of the undercover agents should not be known to the suspected criminal. In this case the agents went as decoys to allow appellant to violate the law.[1] The activities of the agents of the State of Utah were within the limits of the law. Placing the agents as patients does not constitute an entrapment or participation as principals or agents in the crime prosecuted.

Entrapment as a defense must be raised by defendant. Appellant did not raise it at the trial, however in this case there was no entrapment. In *Greene v. United States*[2] the court rejected the entrapment defense if the agent merely afforded an opportunity to commit a crime to one predisposed to commit it.[3]

The receipt by the court of evidence given by appellant to the undercover agents did not violate appellant's Fourth Amendment rights. The facts indicate a total lack of coercion. The agents did not take any articles other than those expressly given them by appellant. Where there is such a high degree of consent the court should look to the totality of the circumstances.

The appellant also claims he was denied his constitutional rights under due process because the State agents who were allegedly medically treated were not joined as co-defendants. The obvious answer is that they were "parties" to the offense as victims and witnesses, not as participants in the practice of medicine. They did not act in concert with appellant to violate the law. The decision of the county attorney not to prosecute them was correct. A decision to prosecute rests in the county attorney's discretion where there is not a grand jury indictment.

1.  *People v. Bucher,* 182 Colo. 211, 511 P.2d 895 (1973); *State v. Walker,* 11 Wash.App. 84, 521 P.2d 215 (1974).

2.  *Greene v. United States,* 454 F.2d 783 (9th Cir. 1971).

3.  *State v. Boccelli,* 105 Ariz. 495, 467 P.2d 740 (1970).

It is argued that the Utah Medical Practice Act, Section 58–12–26 et seq. Utah Code Annotated, violates Article 1, Section 24 of the Constitution of Utah for lack of uniformity with Section 58–1–1, Utah Code Annotated.

The Legislature acted to protect the people of Utah from open and unrestrained practice of medicine and surgery by requiring physicians to obtain a license. They were not only authorized to regulate the healing arts but a failure to do so could be a direct derogation of the implied power of the State to promote the health, safety, comfort, morals and welfare of the people.[4]

■ The public interest requiring the regulation of healing arts and the Legislature undertaking such regulation, it necessarily follows that the profession of healing is no longer a right under Section 58–1–1.1, but should properly be labeled a "privilege" under Section 58–12–27.

■ The statutes are not inconsistent or lack uniformity by prohibiting the practice of medicine by one who has not previously been qualified and licensed.

■ Appellant argues that the practice of medicine is a property right and the regulations and restrictions by the Legislature in the Utah Medical Practice Act, Section 58–12–26 et seq. Utah Code Annotated violates citizens of Utah of their right to life and liberty guaranteed under Article 1 Section 7 of the Utah Constitution and by the Fifth and Fourteenth Amendments to the Constitution of the United States. He claims the right to practice a healing profession is an inherent right and not a privilege. He argues that the Act is unreasonable and discriminatory because it provides for licensing by a committee of medical practitioners who are graduates of a recognized medical college and they have a bias and conflicting interest. He states that it follows that the Act has the effect of granting a monopoly to one profession in all healing. The appellant further attempts to convince this Court that the recognized medical practice is bad.

This Court is not the proper forum to debate such healing standards. It seems self-evident that the protection of the people of the State of Utah against unlearned, unqualified and unproven persons who desire to tamper with human life, health and physical and mental well-being should be the duty of the Legislature.[5]

Utah requires certain qualifications of persons practicing medicine and it is obvious they lessen the evil of unqualified practice, such as that present in this case, where the healing form is so ridiculous that it stretches the imagination that the Legislature could even consider it as a healing form.

■ Appellant claims that the Utah Medical Practice Act, Section 58–12–26 et seq. Utah Code Annotated (1953) violated his rights under Article VI, Section 26 of the Constitution of Utah prohibiting enactment of a private law. This argument is also without merit. This *Court in Board of Medical Examiners v. Blair*[6] stated the Legislature may in the exercise of the police power for the protection of the health and safety of the public "determine and prescribe the qualifications necessary to practice medicine within the State."

Appellant never offered any evidence that his procedures were of any value and never has attempted to comply with the licensing qualifications.

■ Appellant argues the Utah Medical Practice Act is unconstitutional in that it denies him his right of conscience or abridges his free exercise of religion. The Legislature is protecting the people from the quacks who would deceive them into thinking they are receiving medical relief when,

**4.** *Cox v. Board of Education of Salt Lake City,* 21 Utah 401, 414, 60 P. 1013 (1900).

**5.** *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

**6.** *Board of Medical Examiners v. Blair,* 57 Utah 516, 196 P.2d 221 (1921).

in reality, they are being deprived of their money without the remotest possibility of cure. This type of quackery also prevents people who may be or are in dire need of competent aid by their either delaying or foregoing proper treatment. These ill people think they are being cured, when, in fact, they are receiving no real help. There is no evidence the appellant is a member of any valid religious organization or that he has valid religious beliefs to do what he did. In any event, such a belief wouldn't justify the conduct he advocates.

■ Appellant claims his constitutional rights were violated because he was prosecuted by an information instead of upon an indictment by a grand jury. This Court answered that argument in the case of *In re Maxwell* (1899).[7]

The trial and conviction of the petitioner, under the constitution and the laws of this State, upon an information duly filed against him by the county attorney, did not take from or abridge his privileges or immunities as a citizen of the United States, nor were the provisions of the fourteenth amendment violated by his trial and conviction in the manner as provided by the laws of the State of Utah.

The United States Supreme Court in *Hurtado v. California* (1884)[8] has ruled that the grand jury provision of the Fifth Amendment does not apply to the states through the Fourteenth Amendment of the U.S. Constitution. The court held that any procedure which upholds the basic rights of due process (one of which is not the right to indictment by a grand jury) is acceptable. Numerous later U.S. Supreme Court Decisions have followed *Hurtado*.[9]

The conviction in the trial court is affirmed.

HENRIOD, C. J., and ALLETT and MAUGHAN, JJ., concur.

CROCKETT, J., concurs in result.

---

7. 19 Utah 495, 57 P. 412; *Maxwell v. Dow,* 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597.

8. *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884).

9. *Ocampo v. United States,* 234 U.S. 91, 34 S.Ct. 712, 58 L.Ed. 1231 (1914); *Lem Woon v.* *Oregon,* 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1913); *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).