# OCAMPO *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 270. Argued March 12, 13, 1914.—Decided May 25, 1914.

Section 2 of act No. 612 of the Philippine Commission of February 3, 1903, providing that in cases triable before the Court of First Instance in the City of Manila the accused should not be entitled as of right to a preliminary examination in any case in which the prosecuting attorney after due investigation shall have presented an information against him, necessarily operated to repeal inconsistent provisions previously in force in the City of Manila.

The Philippine Bill of Rights, as contained in § 5 of the act of July 1, 1902, contains no specific requirement, such as is contained in the Fifth Amendment, of a presentment or indictment by grand jury, nor is such a requirement included within the guaranty of due process of law.

The guaranty of equal protection of the law in the Philippine Bill of Rights does not require territorial uniformity. It is not violated if all persons within the territorial limits of their respective jurisdictions are treated equally.

Section 2 of Act No. 612 is not in conflict with that paragraph of § 5 of the act of July 1, 1902, which provides that no warrant shall issue but upon probable cause supported by oath or affirmation; a pre-

liminary investigation by the prosecuting attorney upon which he files a sworn information is a compliance with such provision.

A finding of probable cause for arrest by a prosecuting attorney is only *quasi*-judicial; and a statute, otherwise valid, is not invalidated by delegating the duty of investigation to a prosecuting attorney.

On the evidence in this case the trial court properly held that the defendant was, under the law of the Philippine Islands, the responsible proprietor of the newspaper which published the libel on which the prosecution was based.

The appellate jurisdiction of the Supreme Court of the Philippine Islands is not confined to errors of law but extends to a review of the whole case. It has power to reverse the judgment of the Court of First Instance in a criminal case and find the accused guilty of a higher crime and increase the sentence. *Trono* v. *United States*, 199 U. S. 521.

18 Philippine, 1, affirmed.

THE facts, which involve the validity of a judgment of the Supreme Court of the Philippine Islands in a prosecution for criminal libel and the validity of Act No. 612 of the Philippine Commission, are stated in the opinion.

*Mr. William R. Harr*, with whom *Mr. Clement L. Bouve* was on the brief, for plaintiffs in error.

*The Solicitor General* for the United States.

MR. JUSTICE PITNEY delivered the opinion of the court.

On November 5, 1908, an information was filed in the Court of First Instance of the City of Manila, charging plaintiffs in error, with others, as editors, proprietors, owners, directors, writers, managers, administrators, printers, and publishers of the newspaper "El Renacimiento," with publishing in that city a libel against Dean C. Worcester, then a member of the Philippine Commission. The information was subscribed and sworn to by the acting prosecuting attorney, and appended to it, and likewise sworn to by him, was the following declara-

tion: "A preliminary investigation has been conducted under my direction, having examined the witnesses under oath, in accordance with the provisions of section 39 of Act 183 (Manila Charter), as amended by section 2 of Act 612 of the Philippine Commission." Both affidavits were made before the judge of the Court of First Instance, who thereupon issued warrants of arrest, pursuant to which the parties accused were on the same day brought before the court. The information was read to them, and the court allowed them until November 7th to answer. Their attorney, being present, asked that they be furnished with a copy of the information, which request was granted, and a copy was delivered to each of the accused. Thereafter, and on November 7th, before entering any demurrer or answer, they moved to vacate the order of arrest, upon the ground that it was made without any preliminary investigation held by the court, and without any tribunal, magistrate, or other competent authority having first determined that the alleged crime had been committed, and that there was probable cause to believe the defendants guilty of it; the procedure adopted being, as was claimed, in violation of §§ 12 and 13 of General Orders, No. 58, issued by the Military Governor April 23, 1900, and of paragraphs 1, 3, 11, and 18 of § 5 of the Philippines Bill, enacted by the Congress of the United States on July 1, 1902; and it was insisted that § 2 of Act No. 612 of the Philippine Commission, which took from accused persons in the City of Manila the right to a preliminary investigation, was contrary to the cited paragraphs of the Philippines Bill, because it provided that accused persons in that city might be deprived of their liberty without due process of law, denied to the inhabitants of that city the equal protection of the law, deprived persons detained there to answer for a criminal offense of the "proper judicial proceedings," and violated the guaranty against arbitrary detention.

This motion being overruled, defendants moved for an order requiring the prosecuting attorney to submit to the court and to them for examination the proceedings of the preliminary investigation alleged to have been conducted by him. This motion was likewise overruled.

Defendants then asked the court to hold a preliminary investigation before calling upon them to either demur to or answer the complaint. This motion being denied, demurrers were filed, which were overruled, and the defendants were called upon to plead to the information. They stood mute, and a plea of not guilty was entered for each of them. Upon their request, separate trials were granted. Ocampo was found guilty, and sentenced to six months imprisonment and to pay a fine of 2000 pesos and one-fifth of the costs of the action. Kalaw was also found guilty, and sentenced to nine months imprisonment and to pay a fine of 3000 pesos and one-fifth of the costs. Upon their writ of error, the Supreme Court of the Philippine Islands affirmed the judgment as to Ocampo, and modified the sentence imposed upon Kalaw so as to increase the period of his imprisonment to twelve months. 18 Phil. Rep. 1. The present writ of error was then sued out.

The insistence is here renewed, that the arrest and trial of plaintiffs in error was without a preliminary finding of probable cause, and therefore in violation of rights secured to them by the Philippine Bill of Rights (Act of July 1, 1902, § 5, c. 1369, 32 Stat. 691, 692). This act, following the provisions of certain of the Amendments of the Constitution of the United States, declares, *inter alia:*

"SEC. 5. That no law shall be enacted in said islands which shall deprive any person of life, liberty, or property without due process of law, or deny to any person therein the equal protection of the laws

     *      *      *      *      *      *      *      *

"That no person shall be held to answer for a criminal offense without due process of law;   .   .   .

\*    \*    \*    \*    \*    \*    \*    \*

"That no warrant shall issue, but upon probable cause, supported by oath or affirmation.   .   .   ."

Prior to its enactment, and under date April 23, 1900, General Orders, No. 58, had been promulgated by the Military Governor, amending the Criminal Code of Procedure in certain respects, and providing by §§ 12 and 13 that every person making complaint charging the commission of a crime must inform the magistrate of all persons believed to have any knowledge of its commission, whereupon the magistrate must issue subpœnas requiring them to attend as witnesses, and must examine the informant or prosecutor and the witnesses and take their depositions in writing, and if satisfied from the investigation that the crime complained of had been committed and that there was reasonable ground to believe that the party charged had committed it, the magistrate must issue an order of arrest.

By § 40 of Act No. 183 of the Philippine Commission (the Manila Charter, enacted July 31, 1901), municipal courts with criminal jurisdiction were established, and were empowered to conduct preliminary examinations and to release, or commit and bind over any person charged with an offense to secure his appearance before the proper court; it being among other things provided that "every person arrested shall, without unnecessary delay, be brought before a municipal court or a court of first instance for preliminary hearing, release on bail or trial."

Section 44 provided for two justices of the peace for the City of Manila, to exercise within the city the civil jurisdiction conferred upon justices of the peace in Act No. 136; but they were debarred from exercising any criminal jurisdiction, such jurisdiction within the city being confined to Courts of First Instance and the municipal courts.

By Act No. 186 (August 5, 1901), the existing courts of
justices of the peace in the City of Manila were abolished,
and civil actions and proceedings then pending therein
were transferred to the courts of justices of the peace es-
tablished under Act No. 183, while pending criminal ac-
tions and proceedings were transferred to the municipal
courts established under Act No. 183.

Act No. 194 (August 10, 1901), in its first section pro-
vides: "Every justice of the peace in the Philippine Islands
is hereby invested with authority to make preliminary
investigation of any crime alleged to have been committed
within his municipality, jurisdiction to hear and deter-
mine which is by law now vested in the Judges of Courts
of First Instance." And it is by the same section made
the duty of every justice of the peace, when written com-
plaint under oath is made to him that a crime has been
committed within his municipality, and there is reason to
believe that any person has committed it, or when he has
knowledge of facts tending to show the commission of a
crime within his municipality by any person, to issue an
order for the arrest of the accused and have him brought
before the justice for preliminary examination. Section 2
prescribes the procedure, which accords to the accused the
right to examine the complaint and affidavits, to be present
and hear and cross-examine the witnesses for the Govern-
ment, to offer witnesses in his own behalf, and give his
own testimony if he desires; and "upon the conclusion of
the preliminary investigation, if the Justice of the Peace
is of the opinion that there is reasonable cause to believe
that an offense has been committed and that the accused
is guilty thereof, he shall so declare and shall adjudge that
the accused be remanded to jail for safe-keeping to await
the action of the Judge or Court of First Instance, unless
he give bail," etc.;  .  .  .  "On the other hand, if the
Justice of the Peace be of the opinion that no crime has
been committed, or that there is no reasonable ground to

believe the accused guilty thereof, the Justice of the Peace shall order the discharge of the accused. Such discharge, however, shall not operate as a final acquittal of the accused, but he may be again arrested and prosecuted for the same offense.''

It was and is contended by plaintiffs in error that the procedure thus indicated ought to have been followed in their case.

The prosecution proceeded upon the theory that the above requirements as to preliminary examination and the finding of probable cause were repealed as to the City of Manila by Act No. 612 of the Philippine Commission (February 3, 1903), § 2 of which provides:

''In cases triable only in the Court of First Instance in the City of Manila, the defendant shall have a speedy trial, but shall not be entitled as of right to a preliminary examination in any case where the Prosecuting Attorney, after a due investigation of the facts, under section thirty-nine of the Act of which this is an amendment [Act No. 183,] shall have presented an information against him in proper form: *Provided, however,* That the Court of First Instance may make such summary investigation into the case as it may deem necessary to enable it to fix the bail or to determine whether the offense is bailable.''

Section 39 of the Charter Act, here referred to, provides:

''The Prosecuting Attorney of the city of Manila shall have charge of the prosecution of all crimes, misdemeanors and violations of city ordinances, in the Court of First Instance and the municipal courts of the city of Manila. He shall investigate all charges of crimes, misdemeanors, and violations of ordinances, and prepare the necessary informations or make the necessary complaints against the persons accused, and discharge all other duties in respect to criminal prosecutions enjoined upon provincial fiscals in the General Provincial Act and the Criminal Code of Procedure. . . . The Prosecuting Attorney or any

of his assistants may, if he deems it wise, conduct investigations in respect to crimes, misdemeanors and violations of ordinances by taking oral evidence of reputed witnesses, and for this purpose may, by subpœna, summon witnesses to appear and testify under oath before him, and the attendance or evidence of an absent or recalcitrant witness may be enforced by application to the municipal court or the Court of First Instance."

It was this procedure that was followed in the present case. If Act No. 612 is consistent with the Declaration of Rights contained in § 5 of the act of Congress of July 1, 1902, there can be no question that it necessarily operates to repeal, with respect to the City of Manila, inconsistent provisions previously in force there, as above mentioned.

Section 5 of the act of Congress contains no specific requirement of a presentment or indictment by grand jury, such as is contained in the Fifth Amendment of the Constitution of the United States. And in this respect the Constitution does not, of its own force, apply to the Islands. *Hawaii* v. *Mankichi*, 190 U. S. 197; *Dorr* v. *United States*, 195 U. S. 138; *Dowdell* v. *United States*, 221 U. S. 325, 332.

That the requirement of an indictment by grand jury is not included within the guaranty of "due process of law" is of course well settled. *Hurtado* v. *California*, 110 U. S. 516; *McNulty* v. *California*, 149 U. S. 645; *Dowdell* v. *United States, supra; Lem Woon* v. *Oregon*, 229 U. S. 586, 589, and cases cited.

It is contended that since Act No. 612 denies to the inhabitants of Manila the right to a preliminary examination which is accorded to all other people in the Islands, it denies the equal protection of the laws guaranteed by the act of Congress. But it was long ago decided that this guaranty does not require territorial uniformity. In *Missouri* v. *Lewis*, 101 U. S. 22, 30, this court (by Mr. Justice Bradley) said:

"The last restriction [of the Fourteenth Amendment],

as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances, to resort to them for redress. Each State has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects the administration of justice, it may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by anything in the Constitution of the United States, including the amendments thereto."

And see *Hayes* v. *Missouri*, 120 U. S. 68, 72; *Chappell Chemical Co.* v. *Sulphur Mines Co.* (No. 3), 172 U. S. 474; *Mallett* v. *North Carolina*, 181 U. S. 589, 598.

It is, however, further contended that Act No. 612 only undertakes to deny to the inhabitants of the city the right to a preliminary investigation when the prosecuting attorney sees fit to conduct an *ex parte* examination, and that it does not cover the subject of probable cause for the arrest of the accused, or affect the right accorded by §§ 12 and 13 of General Orders, No. 58, and by that paragraph of § 5 of the act of Congress of July 1, 1902, which declares "That no warrant shall issue but upon probable cause, supported by oath or affirmation." In overruling this contention the Supreme Court of the Philippine Islands followed its previous rulings in *United States* v. *Wilson*, 4 Phil. Rep. 317, 322; *United States* v. *McGovern*, 6 Phil. Rep. 621, 623; *United States* v. *Raymundo*, 14 Phil. Rep. 416, 436.

It is insisted that the finding of probable cause is a judicial act, and cannot properly be delegated to a prosecuting attorney. We think, however, that it is erroneous to regard this function, as performed by committing magistrates generally, or under General Orders, No. 58, as being judicial in the proper sense. There is no definite adjudication. A finding that there is no probable cause is not equivalent to an acquittal, but only entitles the accused to his liberty for the present, leaving him subject to rearrest. It is expressly so provided by § 14 of General Orders, No. 58, as it is by § 2 of Act 194, above quoted. Such was the nature of the duty of a committing magistrate in the common-law practice, and it is recognized in Rev. Stat., § 1014. *Benson* v. *McMahon*, 127 U. S. 457, 462, 463; *In re Luis Oteiza y Cortes*, 136 U. S. 330, 335; *Todd* v. *United States*, 158 U. S. 278, 283. In short, the function of determining that probable cause exists for the arrest of a person accused is only *quasi*-judicial, and not such that, because of its nature, it must necessarily be confided to a strictly judicial officer or tribunal. By § 9 of the act of July 1, 1902 (32 Stat. 691, 695, c. 1369), Congress enacted: "That the Supreme Court and the courts of first instance of the Philippine Islands shall possess and exercise jurisdiction as heretofore provided and such additional jurisdiction as shall hereafter be prescribed by the Government of said Islands, subject to the power of said government to change the practice and method of procedure. The municipal courts of said Islands shall possess and exercise jurisdiction as heretofore provided by the Philippine Commission, subject in all matters to such alteration and amendment as may be hereafter enacted by law;" etc. Here we find clear warrant for modifications of the practice and procedure; and since § 5 of the same act (quoted above) does not prescribe how "probable cause" shall be determined, it is, in our opinion, as permissible for the local legislature to confide this duty to a prosecut-

ing officer as to entrust it to a justice of the peace. Consequently, a preliminary investigation conducted by the prosecuting attorney of the City of Manila, under Act No. 612, and upon which he files a sworn information against the party accused, is a sufficient compliance with the requirement "that no warrant shall issue but upon probable cause, supported by oath or affirmation."

The views above expressed render it unnecessary for us to consider whether the objections thus far dealt with were waived by the plaintiffs in error when they gave bond at the time of their arrest.

It is next insisted that the conviction of Ocampo was erroneous for want of evidence that he was a proprietor of the newspaper or participated in the publication of the libel. The law is to be found in Act No. 277 of the Philippine Commission (Phil. Pen. Code 1911, p. 167), of which two sections may be quoted:

"SEC. 2. Every person who wilfully and with a malicious intent to injure another publishes or procures to be published any libel shall be punished by a fine of not exceeding two thousand dollars or imprisonment for not exceeding one year, or both."

"SEC. 6. Every author, editor, or proprietor of any book, newspaper, or serial publication is chargeable with the publication of any words contained in any part of such book or number of each newspaper or serial as fully as if he were the author of the same."

The evidence abundantly supports the conclusion of the courts below that Ocampo was the administrator, manager, and one of the owners of the newspaper known as "El Renacimiento," and there was no error in holding him to be a proprietor within the meaning of § 6.

Finally, it is contended that the Supreme Court of the Philippines had no jurisdiction to increase the punishment of Kalaw. The court was established by Act No. 136 of the Philippine Commission (June 11, 1901), with original

and appellate jurisdiction. By § 18 it was given appellate jurisdiction over the courts of first instance; and by § 39 it was enacted that "The existing Audiencia or Supreme Court is hereby abolished, and the Supreme Court provided by this Act is substituted in place thereof." It is in effect conceded that under the Spanish system the courts of first instance were deemed examining courts, having a sort of preliminary jurisdiction, and that their judgments of conviction or acquittal were not final until the case had been passed upon in the Audiencia or Supreme Court. But it is contended that this was so far changed by General Orders, No. 58, §§ 42, 43, 44, and 50, and by Act No. 194 of the Philippine Commission, § 4 (August 10, 1901), that the judgments of the court of first instance are final unless an appeal be taken. And so it was held, with respect to cases other than capital, in *Kepner* v. *United States*, 195 U. S. 100, 121. But this does not settle the question of the jurisdiction of the Supreme Court of the Islands where an appeal is taken. In the acts referred to, the right of the Government, as well as of the defendant, to appeal from the judgment in a criminal case was recognized. In the *Kepner Case* it was held that § 5 of the act of Congress of July 1, 1902, in declaring that "no person for the same offense shall be twice put in jeopardy of punishment," prevented an appeal by the Government from a judgment of acquittal in the court of first instance. But in *Trono* v. *United States*, 199 U. S. 521, where the defendants appealed from a judgment of the court of first instance, which upon an indictment for murder had found them guilty of the lower crime of homicide, it was held the Supreme Court of the Islands had power to reverse the judgment and find the accused guilty of the higher crime of murder; distinguishing the *Kepner Case*. In *Flemister* v. *United States*, 207 U. S. 372, a judgment of the insular Supreme Court, increasing the sentence imposed by the court of first instance, was affirmed. See,

also, *Dowdell* v. *United States*, 221 U. S. 325, 327; *Pico* v. *United States*, 228 U. S. 225, 230. In short, the appellate jurisdiction of the Supreme Court of the Philippine Islands in criminal cases is not confined to mere errors of law, but extends to a review of the whole case. And such is the settled practice of that court. *United States* v. *Abijan*, 1 Phil. Rep. 83, 85; *United States* v. *Atienza*, 1 Phil. Rep. 736, 738.

*Judgment affirmed.*