**NEW YORK STATE ASSOCIATION OF TRIAL LAWYERS, Molka Reich, Carole Rosen, Joseph Zadik and James E. Chambliss, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**Nelson A. ROCKEFELLER, Louis J. Lefkowitz, John P. Lomenzo, Earl W. Brydges, Joseph Zaretzki, Anthony J. Travia, Moses Weinstein, Perry B. Duryea, Jr., Thomas F. McCoy, and John V. Lindsay, Defendants.**

No. 66 Civ. 467.

United States District Court
S. D. New York.

Jan. 31, 1967.

Standard, Weisberg & Harolds, New York City, Louis R. Harolds, New York City, of counsel, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, 1st Asst. Atty. Gen., George D. Zuckerman, Asst. Atty. Gen., of counsel, for defendants.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs, a bar association "consisting of approximately 3500 attorneys" (Compl., par. 3)* and four named individuals who are alleged to be plaintiffs in personal injury suits pending in the Supreme Court, Richmond County, and in the Civil Courts of Kings and Queens Counties, respectively (par. 4), bring this civil action seeking declaratory and mandatory injunctive relief to require defendants to establish a "judicial re-apportionment" designed to eliminate court delay in the Supreme and lower Courts of various counties in the State of New York.

The named defendants are the Governor and Attorney General of the State

---

* References are to the Amended and Supplemental Complaint.

of New York, who have been sued "as representing the Executive Branch" of the State and in their capacity to make recommendations for new legislation (par. 6); the Secretary of State, who is said to have "authority to accept service on behalf of the legislature" (par. 7); the majority and minority leaders of the Senate and Assembly who are "named as representing the Legislative Branch" (par. 7); the State Administrator of the Judicial Conference of the State of New York (par. 9); and the Mayor of the City of New York (par. 9(a)).

The jurisdiction of this court is sought to be invoked under the fourteenth amendment, 28 U.S.C. §§ 1331 (a), 1343(3), 1357, 42 U.S.C. §§ 1981, 1983 and 1988, and by virtue of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (par. 1).[1]

Although the prayer for relief set forth in the complaint does not specifically call for the enjoining of any state statute, plaintiffs ask that a special three-judge court be convened, as provided in 28 U.S.C. § 2281 et seq., presumably to enjoin the enforcement of New York's constitutional and statutory provisions dealing with the distribution of justices and judges among the judicial districts and counties of the state (Compl., p. 23).[2] Plaintiffs further pray that this Court declare that such provisions of the New York Constitution, New York Judiciary Law and other laws, which by their language or application have resulted in calendar delay in the courts of 18 urban and suburban counties, are in violation of the fourteenth amendment.

Plaintiffs also ask this Court to "order and direct, by mandatory injunction, that the defendants cooperate with one another, and submit a plan to this Honorable Court for the setting up of fair and reasonable Judicial re-apportionment and boundaries" and to provide for the allocation and assignment of sufficient justices and judges and to make available the necessary budgetary requirements, along with "courthouses, personnel and other related facilities" needed to eliminate court delay in any of the counties of the State (pp. 24–25). Pending the submission of such a plan by defendants, plaintiffs ask this Court to authorize the Administrative Board of the Judicial Conference "to re-assign the various Justices and Judges within and throughout the State" and to provide additional personnel and facilities to eliminate delay in urban and suburban counties (p. 25). In the event that the defendants fail to submit the requested plan for "judicial re-apportionment" with necessary budgetary provisions, plaintiffs ask this Court to "itself take such steps as will provide such relief." (pp. 25–26.)

This case is presently before me for the consideration of two motions: the plaintiffs' application for the convention of a three-judge court, and defendants' motion to dismiss.

---

1. As will be made clear herein, the so-called "right" to equal processing of court calendars referred to in the complaint does not arise under the Constitution or laws of the United States so as to confer jurisdiction under 28 U.S.C. §§ 1331(a) or 1343(3). Also 28 U.S.C. § 1357, which provides for jurisdiction in the district courts for injuries incurred in enforcing federal laws for the collection of revenue or the enforcement of voting rights, is totally inapplicable to the subject matter of the complaint. Nor does the "right" to equal processing of court calendars constitute a "civil right" within the meaning of 42 U.S.C. §§ 1981, 1983 or 1988. Furthermore, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 "is not an independent source of federal jurisdiction, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194; the availability of such relief presupposes the existence of a judicially remediable right." Schilling v. Rogers, 363 U.S. 666, 677, 80 S.Ct. 1288, 1296, 4 L.Ed.2d 1478 (1960).

2. Plaintiffs apparently are in some doubt as to the right to the convention of such a court since they request the calling of "a special three-Judge Court, or a single Judge, as the case may be * * * (Compl., p. 23).

■■ Although it is not ordinarily the function or the prerogative of the district judge to whom is addressed an application for a three-judge court under Title 28 U.S.C. § 2281 to consider the merits of the plaintiffs' alleged grievance, Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), it is a well-settled principle that when such an application is made the district judge is entitled to dismiss the complaint if the claim of unconstitutionality is "plainly insubstantial" either because it is "obviously without merit" or because it has been rejected by previous decisions. Swift & Co. v. Wickham, 382 U.S. 111, 114–115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) (per curiam); Powell v. Workmen's Compensation Bd., 327 F.2d 131 (2d Cir. 1964); Bell v. Waterfront Comm'n, 279 F.2d 853 (2d Cir. 1960).

■ Accordingly, where, as here, there is no diversity of citizenship among the parties, a complaint which fails to present a substantial federal question must be dismissed for lack of jurisdiction over the subject matter. California Water Serv. Co. v. City of Redding, 304 U.S. 252, 254, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).

■ It is further "settled that jurisdiction does not arise simply because an averment is made as to the existence of a constitutional question, if it plainly appears that such averment is not real and substantial, but is without color of merit." Newburyport Water Co. v. Newburyport, 193 U.S. 561, 576, 24 S.Ct. 553, 556, 48 L.Ed. 795 (1904).

■ In this case, plaintiffs' entire claim rests on the assumption that there is a federally protected right to have state court judges apportioned among judicial districts and counties in such manner as to prevent any greater delay in the adjudication of cases in one area or political subdivision of the state than another. Not only is there a total absence of authority for the existence of any such right, but the assumption upon which it rests is directly contrary to basic principles of federalism and separation of powers.

■ It has long been recognized that the equal protection clause of the fourteenth amendment does not prohibit a state from prescribing the jurisdiction of its several courts, either as to their territorial limit or to the subject matter, amount or finality of their respective judgments. Ohio ex rel. Bryant v. Akron Metropolitan Park Dist., 281 U.S. 74, 50 S.Ct. 228, 74 L.Ed. 710 (1930); Mallett v. State of North Carolina, 181 U.S. 589, 597–599, 21 S.Ct. 730, 45 L.Ed. 1015 (1901); Brown v. State of New Jersey, 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899); State of Missouri v. Lewis, 101 U.S. 22, 30–31, 25 L.Ed. 989 (1879).

Plaintiffs seek to create an exception to this general policy of the federal judiciary of refusing to interfere with the internal administration by the states of their court systems, by arguing that greater delay in the processing of tort jury and other civil cases in the urban and suburban counties of a state than in its rural areas justifies the imposition of judicial reapportionment by a federal court.

In examining plaintiffs' contention, it should be observed at the outset that the allegations of the complaint fail to disclose any clear distinction between the rural and the so-called urban and suburban counties in the State of New York with respect to existence of court delay.[3]

---

3. Plaintiffs, in their list of 44 of the 62 counties of the State of New York in which there is no delay and which they characterize as "comparatively rural and sparsely populated" includes Erie (1,-064,688); Monroe (586,387); Niagara (242,269); Oneida (264,401); and Onondaga (423,028). In their list of the 18 "urban or suburban" counties in which there is calendar delay, they include: Orange (183,734); Rockland (136,803); Saratoga (89,096); Sullivan (45,272); Ulster (118,804); and Fulton (51,304). The figures in parentheses refer to the 1960 census population of each county.

Apart from the factual inconsistency in plaintiffs' assertion of alleged discrimination against urban and suburban areas in the administration of the courts in New York, is the total absurdity in contending that the Federal Constitution requires equality with respect to court calendars in all counties of the state. It is settled that "Territorial uniformity is not a constitutional requisite." Salsburg v. State of Maryland, 346 U.S. 545, 552, 74 S.Ct. 280, 284, 98 L.Ed. 281 (1954); see Ocampo v. United States, 234 U.S. 91, 98–99, 34 S.Ct. 712, 58 L.Ed. 1231 (1914). See also McGowan v. State of Maryland, 366 U.S. 420, 537, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

In Salsburg v. State of Maryland, supra, the Supreme Court in rejecting a contention that distinctions based on county areas were violative of the Federal Constitution, stated: "The Equal Protection Clause relates to equality between persons as such rather than between areas." Id. 346 U.S. at 551, 74 S.Ct. at 283. The opinion of Mr. Justice Bradley in State of Missouri v. Lewis, supra, cited with approval by the Court in *Salsburg*, contains the following relevant observation (101 U.S. at pp. 30–31):

"As respects the administration of justice, it [a State] may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by any thing in the Constitution of the United States, including the amendments thereto.

We might go still further, and say, with undoubted truth, that there is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment,. be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes *in the same place and under like circumstances*." Id. at 30–31. (Emphasis added.)

Thus, even if the State of New York had by statute distinguished between urban and rural areas in the establishment and administration of its courts, plaintiffs would not have constitutional cause to complain. Here, there is no claim that New York has intentionally discriminated against areas of the state, but has merely failed to achieve equality in the processing of court calendars. Even assuming such "equality" throughout the state in the processing of court calendars were physically capable of being achieved, it is clear that there is no federal constitutional or statutory basis for imposing such a requirement upon a state.

In asking this Court to undertake the responsibility for ordering a judicial reapportionment of New York State judges, plaintiffs attempt to rely upon the recent legislative reapportionment cases (par. 25). Such reliance is totally without merit as should be obvious from a reading of the reapportionment opinions.

The reapportionment cases (Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12

L.Ed.2d 506 and companion cases decided on June 15, 1964) were concerned with the composition of state legislatures as "the fountainhead of representative government in this country" and the recognition that "Since legislatures are responsible for enacting laws by which all citizens are to be governed, they should be bodies which are collectively responsive to the popular will." Reynolds v. Sims, supra at 564–565, 84 S.Ct. at 1383. The Supreme Court concluded that fair and effective representative government required that population be "the starting point for consideration and the controlling criterion for judgment in legislative apportionment controversies," and that "seats in both houses of a bicameral state legislature must be apportioned on a population basis." Id. at 567–568, 84 S.Ct. at 1384–1385.

The state judiciary, unlike the legislature, is not the organ responsible for achieving representative government. Nor can the direction that state legislative districts be substantially equal in population be converted into a requirement that a state distribute its judges on a per capita basis.

As stated by the Court in Buchanan v. Rhodes, 249 F.Supp. 860, 865 (N.D. Ohio), appeal dismissed, 385 U.S. 3, 87 S.Ct. 33, 17 L.Ed.2d 3 (1966):

"we recognize that the plaintiffs have attempted to draw a close analogy to the legislative reapportionment cases, but they had failed to grasp the thrust of that line of authority. The first principle inherent in our republican form of government is that individual citizens submit to rule by legislative fiat enacted by a majority of a popularly elected legislative body working within a constitutional framework. When the representatives to that legislative body are malapportioned among the several districts within the political unit, then the voting strength of the individual citizens in these subdivisions is of unequal weight. It is the dilution of power in the vote of citizens situated in districts suffering from inadequate representation which brings into play the Equal Protection Clause. And there can be no reasonable justification for a system of apportionment which ignores the relative population of each political subdivision because 'Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interest.' Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Thus the ratio which the population of each political subdivision bears to the population of the whole political unit has become, right or wrong, the sole criterion for judging the equality of representation and voting strength for the individual citizens within each political subdivision.

But in determining the reasonableness of a judicial system which permits at least one judge operating a court of general jurisdiction in each county, we must recognize one glaring distinction between the functions of legislators and the functions of jurists. Judges do not represent people, they serve people. They must, therefore, be conveniently located to those people whom they serve. Location, then, is one of many significant factors which the legislature may properly consider when carrying out its constitutional mandate to create an effective judicial system. The State constitutional provision requiring one judge per county bears a reasonable relation to the State's aim: a conveniently effective judicial system; the efforts heretofore by the legislature to increase the number of jurists in populous counties reflect no departure from reason. Therefore we see no constitutional basis for the plaintiffs' complaint. On the contrary, we recognize, as a matter of law, that the relative population of the counties of Ohio can not be, as the plaintiffs argue, the sole criterion of apportioning judges among the counties."

In contrast to legislative reapportionment, population is not necessarily the sole, or even the most relevant, criterion for determining the distribution of state

judges. The volume and nature of litigation arising in various areas of the state bears no direct relationship to the population of those areas.[4] Moreover, it is evident from an examination of the statistics compiled by the Judicial Conference of the State of New York that the problem of delay in this court is not confined to populous urban counties as plaintiffs suggest.[5]

It would also be inaccurate for the distribution of judges to be based solely on the number of cases pending in a county. Obviously, an anti-trust or stockholders' derivative suit cannot be equated with a personal injury suit in complexity or in time of disposition of an action.

The inapplicability of legislative apportionment decisions to state judges was recently recognized by a three-judge federal court in Stokes v. Fortson, 234 F. Supp. 575, 577 (N.D.Ga.1964) (per curiam) which stated:

the one man-one vote doctrine, applicable as it now is to selection of legislative and executive officials, does not extend to the judiciary. Manifestly, judges and prosecutors are not representatives in the same sense as are legislators or the executive. Their function is to administer the law, not to espouse the cause of a particular constituency. Moreover there is no way to harmonize selection of these officials on a pure population standard with the diversity in type and number of cases which will arise in various localities, or with the varying abilities of judges and prosecutors to dispatch the business of the courts. An effort to apply a population standard to the judiciary would, in the end, fall of its own weight.

In short, plaintiffs' attempt to pattern judicial apportionment after legislative apportionment ignores the obvious truth that the administration of a state's judiciary, unlike the apportionment of a legislative body, cannot be governed by simple arithmetic.

Nor is it particularly helpful to put forth the litigation needs of the area as a criterion without consideration of the economic, political, or indeed professional factors involved.

■ Even if a federal court were inclined to undertake the solution of state court delay, the present "lack of judicially discoverable and manageable standards for resolving it", as well as the "respect due coordinate branches of government", make the "political" issues raised by the complaint inappropriate for judicial resolution. Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962).

■ Of course, the mere denomination of the problem as "political" is not sufficient, for "if the plaintiffs have accurately framed a cause of action based upon the Equal Protection Clause they are entitled to go forward * * *."

---

4. E. g., New York County's unique position as the center of the nation's commerce, and Albany County's position as the seat of state government must necessarily result in a large amount of litigation which bears no relation to their population. New York County, with a population in 1960 of 1,698,281, had 6,776 civil cases pending in the State Supreme Court as of June 30, 1965, while Queens County, with a population of 1,809,578 had 5,677 civil cases pending at the same time. 1965–66 N.Y.Legis. Manual at 1099, 1104; Statistical Report of the Judicial Conference of the State of New York, No. 3–1965 at 5.

Albany County, with a 1960 population of 272,926 had 1,696 civil cases pending in the State Supreme Court as of June 30, 1965, whereas Oneida County, with nearly the same population (264,401), had only 573 civil cases pending at the same time. Legis.Manual at 1083, 1100, Stat.Report, supra at 5–6.

It is obvious that allocation of federal judgeships is not made on a population basis either.

5. E. g., as of June 30, 1965, Rockland (136,803), Dutchess (176,008), and Richmond (221,991) are among the four counties with the greatest delay in the disposition time of jury-tort, as well as all civil cases in the Supreme Court. Statistical Report of the Judicial Conference of the State of New York, No. 3–1965 at 3.

Buchanan v. Rhodes, supra 249 F.Supp. at 864. However,

"No finicky or exact conformity to abstract correlation is required of legislation. The Constitution is satisfied if a legislature responds to the practical living facts with which it deals. Through what precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial re-examination. It is enough to satisfy the Constitution that in drawing them the principle of reason has not been disregarded. See Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163. And what degree of uniformity reason demands of a statute is, of course, a function of the complexity of the needs which the statute seeks to accommodate." McGowan v. State of Maryland, supra 366 U.S. at 524, 81 S.Ct. at 1188.

The complaint itself offers no plan to solve the problem; yet it requests this Court to undertake the task of judicial reapportionment and to provide relief from court delay if defendants fail to adopt a suitable plan. It seems clear that the problem is not to be resolved by reapportioning judges among judicial districts on a per capita basis.

Nor is it by any means clear that the appointment of new judges would resolve the problem. "In New York State, during the past ten years, forty-five new judges were provided for the principal statewide trial court, yet the delays today are only a little less oppressive than those of ten years ago." Desmond, Current Problems of State Court Administration, 65 Colum.L.Rev. 561, 562–563 (1965). (Footnote omitted.) The problem has been a subject of continual study by those well qualified to conduct it. See, e. g., the Annual Reports of the Judicial Conference. Any attempt to reduce court delay should be resolved in the Legislature. A referendum on the holding in 1967 of "a convention to revise the constitution and amend the same" was authorized, pursuant to Ar-

ticle XIX, § 2 of the N. Y. State Constitution in 1965. Laws 1965, c. 371, §§ 1, 2. A temporary State Commission on Revision and Simplification of the State Constitution was likewise created. Laws 1965, c. 443. The referendum was approved at the general election on November 2, 1965. Legislation has been repeatedly introduced to increase the Judiciary. Unless this Court is to act as a "super-legislature" to question the wisdom of the New York State Legislature's distribution of judges, the complaint must be dismissed. Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

It is my conclusion, for the reasons set forth herein, that this Court lacks jurisdiction over the subject matter of this action. Accordingly, it is not necessary to determine whether plaintiffs have capacity to sue, whether there has been a failure to join indispensable parties as defendants, or whether the complaint fails to state a claim against the defendant state or municipal officials upon which relief can be granted.

The motion for appointment of a statutory three-judge court is denied, and the amended and supplemental complaint is dismissed.

It is so ordered.