446 So.2d 140 (1983)
HOME BUILDERS AND CONTRACTORS ASSOCIATION OF PALM BEACH COUNTY, INC., a Florida Corporation, Individually and On Behalf of All Others Similarly Situated, and Ted Satter Enterprises, Inc., a Florida Corporation, Appellants,
v.
The BOARD OF COUNTY COMMISSIONERS OF PALM BEACH COUNTY, Bill Bailey, As Chairman of Said Board of County Commissioners, Dennis P. Koehler, Peggy B. Evatt, Frank Foster, and Norman Gregory, As Members of Said Board of County Commissioners and George R. Brockway, Building Official of Palm Beach County, Edgar Howell, Building Official of City of Boynton Beach, Roy Reid, Building Official of City of Delray Beach, and Alvin Butterfield, Building Official of Village of Tequesta, Appellees.
No. 82-659.
District Court of Appeal of Florida, Fourth District.
October 12, 1983.
Rehearing Denied February 1, 1984.
*141 Grover C. Herring and James L. Watt of Arnstein, Gluck & Lehr, and Larry Klein, West Palm Beach, for appellants.
Charles F. Schoech, County Atty., West Palm Beach, and Fred P. Bosselman and Edward F. Ryan, Chicago, Ill., Nancy E. Stroud, of Burke, Bosselman, Freivogel, Weaver, Glaves & Ryan, Boca Raton, for appellees.
Stephen W. Metz, Tallahassee, amicus curiae for Florida Home Builders Ass'n.
DOWNEY, Judge.
This case involves the validity of a Palm Beach County ordinance imposing an impact fee on new development for the purpose of constructing roads made necessary by the increased traffic generated by such new development.
Appellants, Home Builders and Contractors Association of Palm Beach County, Inc. (hereafter Home Builders), and Ted Satter Enterprises, Inc., filed suit against the Board of County Commissioners of Palm Beach County for declaratory and injunctive relief to invalidate Palm Beach County Ordinance 79-7, as amended, denominated the "Fair Share Contribution for Road Improvements Ordinance." From a final judgment upholding the validity of the ordinance, Home Builders has perfected this appeal.
The Palm Beach 1980 County Comprehensive Plan recognized that in view of the unusual growth rate being experienced in the county and in order to maintain a consistent level of road service and quality of life, extensive road improvements would be necessary, requiring regulation of new development activity which generates additional automobile traffic. The County Commission therefore enacted Ordinance 79-7 in order to finance the necessary road capital improvements and to regulate increases in traffic levels. The ordinance would require any new land development activity generating road traffic to pay its "fair share" of the reasonably anticipated cost of expansion of new roads attributable to the new development.
*142 The ordinance has a formula which takes into consideration the costs of road construction and the number of motor vehicle trips generated by different types of land use. It provides for a fee of $300 per unit for single family homes, $200 per unit for multi-family, $175 per unit for mobile homes with other amounts for commercial or other development, all subject to annual review. The fee is to be paid upon commencement of any new land development activity generating traffic. The ordinance divides the county into forty zones, indicated on a map incorporated by reference into the ordinance, and establishes a trust fund for each zone. Funds collected from building activity in a particular zone may only be spent in that zone, and must be spent within a reasonable time after collection (not later than six years) or returned to the present owner of the property.
The briefs of the parties and amicus present the following questions for resolution:
1. Whether Palm Beach County has authority to impose an impact fee on new development for the construction of public roads.
2. Whether the proposed ordinance violates the equal protection clauses of the Constitutions of the United States and State of Florida.
3. Whether the ordinance imposes a regulatory fee or a tax.
In a well considered final judgment the trial judge either expressly or impliedly answered the foregoing questions adversely to appellants.

I.
The initial question which must be answered is the challenge to the county's authority to enact an ordinance of this kind. Palm Beach County is a non-charter county, and thus we must look to Article VIII, Section 1(f) of the Florida Constitution and various enabling statutes to resolve the scope of the county's authority in this area.
Article VIII, Section 1(f), Florida Constitution, provides:
(f) NON-CHARTER GOVERNMENT. Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict.
Ordinance 79-7, the ordinance in question, expressly cites as authority for the enactment of that legislation Sections 125.01 and 163.3161, Florida Statutes. Section 125.01(1)(m) & (w), Florida Statutes (1981), provide:
(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
... .
(m) Provide and regulate arterial, toll, and other roads, bridges, tunnels and related facilities; eliminate grade crossings; provide and regulate parking facilities; and develop and enforce plans for the control of traffic and parking.
... .
(w) Perform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law.
In addition, Section 163.3161, Florida Statutes, known as the Local Government Comprehensive Planning Act, contains a broad grant of power for local governments to enact plans and programs to guide and control future development.
The Supreme Court of Florida in Speer v. Olson, 367 So.2d 207, 210-11 (Fla. 1979), characterized the legislative intent in enacting Chapter 125 as follows:
The intent of the Legislature in enacting the recent amendments to Chapter *143 125, Florida Statutes, was to enlarge the powers of counties through home rule to govern themselves.
The first sentence of Section 125.01(1), Florida Statutes, (1975), grants to the governing body of a county the full power to carry on county government. Unless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of this sentence, has full authority to act through the exercise of home rule power.
The court went on to point out that one of the legislative purposes in passing Chapter 125 was to enable local governments to govern themselves without the necessity of running to the legislature every year for authority to act (citing State v. Orange County, 281 So.2d 310 (Fla. 1973)).
We know of no general or special act which purports to limit the grant of authority contained in the foregoing constitutional and statutory enactments nor is the ordinance inconsistent with any general or special law. Art. VIII, sec. 1(f), Fla. Const. Accordingly, we hold that Palm Beach County had the power and authority to enact the fee impact ordinance in question, assuming the ordinance involves a regulatory fee rather than a tax.

II.
Home Builders contends the ordinance is invalid because of the disparity between the people who benefit and the people who pay. As stated in its brief:
Our position is that since anyone can drive a vehicle over any of these roads, regardless of whether he lives in the zone or has paid the impact fee, there is too great a disparity between those who pay and those who receive the benefit, making the charge in reality a tax, which the county does not have the power to impose.
If by that argument it is Home Builders' position that the benefits accruing from roads constructed with the impact fees collected must be used exclusively or overwhelmingly for the subdivision residents in question, we would have to differ. It is difficult to envision any capital improvement for parks, sewers, drainage, roads, or whatever, which would not in some measure benefit members of the community who do not reside in or utilize the new development. For example, landowners abutting a subdivision may well derive substantial benefit from intrasubdivision drainage facilities. Parks within subdivisions are not restricted to subdivision residents only. Furthermore, intrasubdivision streets and roads may be extensively used by persons not residents thereof.
A resume of the decisions in this and other jurisdictions demonstrates that those attacking impact fees often rely upon this same argument; it is one frequently found and generally rejected. In Call v. City of West Jordan, 606 P.2d 217 (Utah 1979), on rehearing 614 P.2d 1257 (Utah 1980), the appellant contended that an ordinance requiring a developer to contribute seven percent of the development land, or a fee in lieu thereof, for public use for flood control, parks, or recreation areas was invalid because, among other things, the land dedicated or the fees paid would not be used solely for the benefit of the subdivision in question and that nonresidents of the subdivision and of the county would be using the improvements also. The Supreme Court of Utah rejected this contention, and held that it is sufficient if the improvements constructed with the fees imposed bear a reasonable relationship to the needs created by the subdivision. Call, supra, at 220. Similar arguments met the same fate in the oft cited case of Associated Home Builders v. City of Walnut Creek, 4 Cal.3d 633, 94 Cal. Rptr. 630, 484 P.2d 606 (1977), and in the case of Ayres v. City Council of City of Los Angeles, 34 Cal.2d 31, 207 P.2d 1 (1949). Our recent decision in Hollywood, Inc. v. Broward County, 431 So.2d 606 (Fla. 4th DCA 1983), also supports a holding that benefit accruing to the community generally does not adversely affect the validity of a development regulation ordinance as long as the *144 fee does not exceed the cost of the improvements required by the new development and the improvements adequately benefit the development which is the source of the fee.

III.
Next Home Builders contends that the fair share ordinance is arbitrary and discriminatory and thus violates the equal protection provisions of the Federal and State Constitutions. The thrust of the argument is that since municipalities may "opt out" of the ordinance under Article VIII, Section 1(f) of the Florida Constitution, and thirty-three of the thirty-seven municipalities in the county have opted out, equal protection is denied to those subject to the ordinance.
We disagree. Using the rational basis test articulated in In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980), we believe the evidence demonstrates that the ordinance bears a reasonable relationship to a legitimate state purpose. The Florida Constitution itself provides that county ordinances of non-charter counties shall not be effective in a municipality if it conflicts with a municipal ordinance. Surely that in itself should not render all non-charter county regulatory fees ineffective or impact fees could only be allowed in charter counties. Furthermore, the fact that an impact fee is payable on land located in the county whereas it would not be payable on nearby land in a municipality which has opted out does not offend equal protection. Unequal or different charges or fees assessed in incorporated and unincorporated areas, like different hours for retail liquor sales and other areas of regulation which may lack uniformity, are not improper where such legislation is otherwise a valid exercise of governmental power. As the court said in Wednesday Night, Inc. v. City of Fort Lauderdale, 272 So.2d 502, 505 (Fla. 1973):
Insofar as concerns equal protection, it is well settled that the Constitution of the United States does not prohibit legislation which is limited to the territory within which it is to operate. The constitution guaranty of equal protection of laws does not require territorial uniformity. See Ocampo v. United States, 234 U.S. 91, 34 S.Ct. 712, 58 L.Ed. 1231, and McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393.
In addition, we would observe that for aught we know any of these municipalities which have opted out may themselves one day enact impact fees, which will tend to lessen the ostensible unequal treatment of land development in different areas.

IV.
Finally, appellants maintain that the ordinance is a tax rather than a regulatory fee and thus in violation of Article VII, Section 1(a) of the Florida Constitution. In all candor we concede this is the most difficult point raised in this appeal. As one reads the various cases involving the dichotomy between a fee and a tax the distinction almost seems to become more amorphous rather than less. In any event, some years ago this court decided Broward County v. Janis Development Corp., 311 So.2d 371 (Fla. 4th DCA 1975), and held that a county ordinance imposing an impact fee for roads was in reality a tax rather than a fee. Appellants naturally rely heavily upon Janis to support their argument that this ordinance is a tax in sheep's clothing and that impact fees and roads are simply not compatible. However, the problem with the Janis ordinance was not that it involved an impact fee for roads (as opposed to parks or drainage, etc.) but rather that the legislation had several inherent defects. For example, the money generated by the ordinance far exceeded the cost of meeting the needs brought about by the new development. In addition, the ordinance was lacking in specific restrictions regarding the use of revenue received. These are the features which required this court to hold it was not dealing with a regulatory fee. The amount and use of the funds simply did not jibe with the concept of regulation; it smacked more of revenue raising which is descriptive of a tax.
*145 In Contractors & Builders Ass'n of Pinellas County v. City of Dunedin, 329 So.2d 314 (Fla. 1976), cert. denied 444 U.S. 867, 100 S.Ct. 140, 62 L.Ed.2d 91 (1979), and Hollywood, Inc., supra, the supreme court and this court pointed out the features of the Janis ordinance which kept it from passing muster as an acceptable impact fee ordinance. Consequently, the Palm Beach County ordinance in question here was crafted with Dunedin's lessons in mind. The present ordinance recognizes that the rapid rate of new development will require a substantial increase in the capacity of the county road system. The evidence shows that the cost of construction of additional roads will far exceed the fair share fees imposed by the ordinance. In fact the county suggests that under the ordinance the cost will exceed the revenue produced by eighty-five percent. The formula for calculating the amount of the fee is not rigid and inflexible, but rather allows the person improving the land to determine his fair share by furnishing his own independent study of traffic and economic data in order to demonstrate that his share is less than the amount under the formula set forth in the ordinance. Lastly, expenditure of the funds collected is localized by virtue of the zone system.
Thus, it appears that the Palm Beach County ordinance meets the tests laid down in Dunedin and followed in Hollywood, Inc., which supports the trial judge's findings that the ordinance imposes a regulatory fee and not a prohibited tax. We would sum up this point by quoting from an informative article by Juergensmeyer and Blake entitled Impact Fees: An Answer to Local Governments' Capital Funding Dilemma, 9 Fla.St.U.L.Rev. 415, 440-41, wherein it is said:
The appropriate framework for determining whether an impact fee is a regulation or a tax is one of public policy in which a number of factors should be weighed. The home rule powers granted local governments in Florida, the legislative mandate that local governments must plan comprehensively for future growth, and the additional broad powers given them to make those plans work effectively, indicate that properly limited impact fees for educational or recreational purposes should be construed as regulations. Characterization as a regulation is particularly appropriate where an impact fee is used to complement other land use measures such as in lieu fees or dedications. If an impact fee is characterized as a regulation, its validity should then be determined by reference to the dual rational nexi police power standard.[1]
Although the foregoing quote is by its own terms limited to fees for educational and recreational purposes, we see no reason why it could not have included roads.
For the foregoing reasons, we affirm the judgment appealed from.
AFFIRMED.
LETTS, J., and GOLDMAN, MURRAY, Associate Judge, concur.
NOTES
[1] This standard requires an analysis of regulatory fees similar to that adopted by this court in Hollywood, Inc., supra.