**WATER ISLE HOTEL AND BEACH CLUB, LTD., Appellee,**

v.

**KON TIKI ST. THOMAS, INC., Appellant.**

No. 85–3475.

United States Court of Appeals, Third Circuit.

Argued April 29, 1986.
Decided July 14, 1986.

Bruce W. Streibich (argued), Frederick G. Watts, St. Thomas, V.I., for appellant.

Maria Tankenson Hodge (argued), St. Thomas, V.I., for appellee.

Before HUNTER, WEIS, and MANSMANN, Circuit Judges.

WEIS, Circuit Judge.

The issue in this appeal is whether the Virgin Islands government has authority to enact legislation affecting property owned by the United States but which has been leased to a private entity. We conclude that because Congress has granted concurrent jurisdiction to the Virgin Islands, the local statutes should be given effect. Consequently, we will vacate an injunction granted by the district court based on the erroneous view that the territorial government lacked power to legislate restrictions on the use of federal land.

The district court entered an injunction on March 27, 1984, granting the plaintiff's request for relief against defendant. Plaintiff moved to amend its complaint to delete a request for damages. On July 16, 1985, that motion was granted, and the court denied the defendant's motion to dissolve the injunction.

Plaintiff, Water Isle Hotel and Beach Club, Inc., is a sub-lessee under a lease with the United States Interior Department. The lease covers a 500-acre island off the coast of St. Thomas, near Charlotte Amalie. Plaintiff made substantial improvements to the island, including the construction of a major hotel and other facilities usually found at a vacation resort. Among the amenities available for guests is nearby Honeymoon Beach.

Defendant Kon Tiki St. Thomas, Inc. owns a catamaran, some ninety feet long, which features a restaurant, bar, gift shop, and a steel band. The craft accommodates between 150–300 persons who embark at Charlotte Amalie for the short trip around the harbor and to Water Island. Free rum drinks are served to the passengers on the voyage, which is advertised as "The booziest cruise to end all boozie cruises."

Plaintiff alleged that on arrival at Water Island, the catamaran would be tied to a palm tree, and the passengers would disembark onto Honeymoon Beach. According to plaintiff, the passengers would then "take over," causing hotel guests to leave the beach. The passengers, fueled with the free rum, were allegedly boisterous; they commandeered privately-owned beach chairs and boats, and overtaxed the sanitary facilities.

These daily visits by the Kon Tiki were made without the plaintiff's permission, and when defendant refused to discontinue the trips, plaintiff sought relief in the district court. Defendant denied responsibility for the passengers' activities on the beach, and more significantly contended that the Open Shorelines Act of the Virgin Islands, 12 V.I.C. § 401–403, confers a pub-

lic right to use and enjoy the beaches. Under the defendant's interpretation of that statute, plaintiff did not have sufficient proprietary interest to enjoin the activities on the beach.

After an evidentiary hearing, the district court concluded the Shorelines Act does not apply to Water Island because the Virgin Islands legislature lacked authority to enact laws affecting that area. Although a federal statute granted the Virgin Islands concurrent authority over some matters on Water Island, the court noted that the statute did not give the legislature power to limit dominion over Honeymoon Beach. Therefore, said the district court, the expeditions by the Kon Tiki to the beach, being without permission, constituted a trespass.

Resolution of this case must begin with a historical background. The United States purchased the Virgin Islands, including Water Island, from Denmark in 1917. *See* 39 Stat. 1706 (1917). These islands and those acquired as a result of the Spanish-American War in 1898 posed constitutional problems in the early part of this century. The controversy focused on whether the newly acquired lands would be incorporated as states into the United States or remain unincorporated territories. The question became important in deciding whether trial by jury was a necessary incident to judicial procedure in the Phillipine Islands, *Dorr v. United States*, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904); whether natives of Puerto Rico were aliens under the Immigration laws, *Gonzales v. Williams*, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed.2d 317 (1904); and whether the right to a grand jury indictment applied in the Phillipines, *Ocampo v. United States*, 234 U.S. 91, 34 S.Ct. 712, 58 L.Ed. 1231 (1914).

In *Balzac v. Porto Rico*, 258 U.S. 298, 312, 42 S.Ct. 343, 348, 66 L.Ed. 627 (1922), the Supreme Court phrased the issue not as whether the Constitution applied to "the Phillipines or Porto Rico when we went there, but which of its provisions were applicable by way of limitation upon the exercise of executive and legislative power in dealing with new conditions and requirements." The extension of all constitutional rights, including such common law procedures as trial by jury, was considered inappropriate for people who had lived under the civil law traditions for centuries. Only territories incorporated within the United States or those acquired with promise of incorporation, were governed by the Constitution in all aspects.[1]

The Court in *Balzac* concluded that even though Congress had extended many of the benefits of citizenship to Puerto Ricans, that action did not constitute incorporation by implication. Incorporation status requires express congressional enactment.

By statute the Virgin Islands is specifically designated as an unincorporated territory which does not enjoy the autonomy of a state within the union. Nevertheless, Congress has steadily increased the scope of self-government granted to the Virgin Islands.

As noted in *Harris v. Boreham*, 233 F.2d 110, 114 (3d Cir.1956), "Congress may create a territorial government for an unincorporated territory and may confer upon it an autonomy similar to that of the states." Toward this end, Congress enacted the Organic Act of 1936, 49 Stat. 1807 (1936), which provided that "all property which may have been acquired by the United States from Denmark in the Virgin Islands ... not reserved by the United States for public purposes prior to June 22, 1937, is placed under the control of the Government of the Virgin Islands." 48 U.S.C. § 1405c(a).

In 1954, Congress revised the Organic Act to give a greater degree of autonomy, economic as well as political, to the people of the Virgin Islands. 1954 U.S. Code Cong. & Ad. News 2585, 2616. The Organic Act was modified again in 1958. On that occasion the legislative power of the Virgin Islands was extended to "all rightful subjects of legislation." The intended scope of

---

**1.** For an interesting account of the incorporation doctrine, see Coudert, *The Evolution of* *The Doctrine of Territorial Incorporation* 26 Colum.L.Rev. 823 (1926).

the amendment, as explained by the Senate Committee on Interior and Insular Affairs, was to confirm that the territorial jurisdiction covers "the ordinary area of sovereign legislative power as limited and circumscribed by the Revised Organic Act or the laws of the United States made applicable to the Virgin Islands." 1958 U.S. Code Cong. & Ad. News 4334, 4335.

The legislative grant to the Virgin Islands was broadened further in 1982 when the United States conveyed certain submerged and filled lands to the Virgin Islands government. 48 U.S.C. §§ 1701–1708. At that time Congress conferred on the government of "the Virgin Islands ... concurrent jurisdiction with the United States over parties found, acts performed, and offenses committed on property owned, reserved, or controlled by the United States in ... the Virgin Islands." 48 U.S.C. § 1704.

These revisions of the Organic Act reveal that Congress intends the territorial legislature to have power to regulate conduct and activity occurring on federal property located in the Virgin Islands to the extent such exercise of authority is not inconsistent with federal use of the property. Hence, we must inquire whether application of the Open Shorelines Act to Water Island infringes on the United States' current use of the property.

The Supreme Court wrote an instructive opinion in *Fort Leavenworth R.R. Co. v. Lowe,* 114 U.S. 525, 55 S.Ct. 995, 29 L.Ed. 264 (1885), where the respective rights of a state and the federal government were at stake. The case is not controlling because a state's dominion, not that of an unincorporated territory, was in issue. However, *Fort Leavenworth's* reasoning is helpful because the history of the relationship between the United States and the Virgin Islands indicates that Congress desired the territory to have jurisdictional powers analogous to those of a state.

In *Fort Leavenworth* the federal government had acquired land in Kansas for use as a military installation, and the question was whether the state had the power to tax private interests located on the reservation. The Court observed that forts and other military facilities are free from state jurisdiction that would impair their effective use. "But, when not used as such instrumentalities, the legislative power of the State over the places acquired will be as full and complete as over any other places within her limits." 114 U.S. at 539, 5 S.Ct. at 1003. A cession by the state to the federal government "is necessarily temporary, to be exercised only so long as the places continue to be used for the public purposes for which the property was acquired or reserved from sale. When they cease to be thus used, the jurisdiction reverts to the State." 114 U.S. at 542, 5 S.Ct. 1004.

The case before us presents a similar situation. Because of defense needs, in 1944 the United States condemned Water Island, then in possession of a Danish company, with the intention of building a fort. Construction began but was not completed, and in 1952 pursuant to congressional direction, the Department of the Army transferred administrative responsibility and control over the island to the Department of the Interior. In that same year, the Secretary of the Interior leased the property to Water Island, Inc., giving it the exclusive right to develop the area as a tourist resort. In time, the island was subleased to plaintiff.

Although the federal government acquired the island by condemnation for a wartime defense purpose, when that project was abandoned the governmental interest changed from military to proprietary. Turning the administration of the island over to the Department of the Interior and leasing it to a private party for recreational use demonstrate the United States' altered interest.

The federal government's encouragement of tourism is not an interest which would clash with the exercise of autonomy by the Virgin Islands government. Indeed, as a proprietor, the federal government benefits from the attraction of additional tourists to the Territory.

Because the beach front in the Virgin Islands is a finite resource, the Open Shorelines Act makes this tourist attraction available to all visitors and inhabitants. In working toward this goal, the Act is in keeping with the congressional grant of authority. Although the legislation would have been incompatible with the original reason for condemning Water Island, in terms of current concerns the federal government's interests are served by acquiescence in the local law. Consequently, no federal considerations exist that are adverse to an exercise of concurrent jurisdiction by the Virgin Islands.

■ Concurrent jurisdiction in this context must be understood as the determination by the United States to allow the Virgin Islands government to regulate conduct and activity occurring on federal property. The grant of concurrent jurisdiction permits the local government to regulate to the extent the United States property is not used for an inconsistent federal governmental purpose and to the extent the Virgin Islands enactments do not contravene with federal laws applicable to the Islands.

■ Concurrent jurisdiction recognizes the power of territories to regulate conduct on federal property as limited by the paramount right of the United States to revoke the grant at any time and resume direct control. This reservation of authority is derived from "the power existing in Congress to make laws for such territories and subject to such constitutional restrictions upon the powers of that body as are applicable to the situation." *Dorr v. United States*, 195 U.S. at 143, 24 S.Ct. at 810.

In summary, we conclude that on the basis of statutory authorization, congressional policy, and harmony between local and federal interests, the Open Shorelines Act applies to Water Island.[2]

Because the relief granted by the district court is inconsistent with this holding, the injunction will be vacated and the case re-manded to the district court for further proceedings consistent with this opinion and the Open Shorelines Act.

---

**2.** A Bill presently pending in Congress would amend the revised Organic Act to make the policy of extending concurrent jurisdiction even more explicit. The legislative history cites the district court's decision here as inconsistent with that policy. *See* H.R. 2478, 99th Cong., 2d Sess., 132 Cong. Rec. S4844 (April 24, 1986).